ELLIS, Judge.
The State Farm Mutual Automobile Insurance Co. of • Illinois, appellee herein, applied to the Casualty and Surety Insurance Division of the Louisiana Insurance Rating Commission seeking permission to us,e its membership fee plan of operation in the State of Louisiana.
This plan consists of three parts:
*890 “1. Deviate 25% from manual rates for casualty insurance.
“2. Issue a six months policy at 50% of the annual rate, the present rule requiring such policies be written on the basis .of 60% of the annual rate.
“3. Charge an initial membership fee in connection with its policy, which charge is to be nonrecurring.”-
The Casualty and Surety Division, on consideration of the application, granted this Company the right to charge a membership fee as set forth in item three above, but denied it the right to use the other two parts of its plan, items one and two above. This ruling was appealed to the Louisiana Insurance Rating Commission, which, after hearing, reversed the ruling and found that the Company was entitled to deviate 25% and to write six months policies without surcharge, items one and two above, but was not entitled to charge membership fees according to item three above.
This last ruling was appealed to'the 19th Judicial District Court for the Parish of East Baton Rouge upon that portion which denied the use of a membership fee charge. This Lower Court reversed the Commission and held that the Company was entitled to charge initial membership fees in Louisiana. Judicial review in the Lower Court was had only as concerns item three, the membership fee, and the judgment below provides that the order of the Commission in all other respects is affirmed. The Louisiana Insurance Rating Commission appealed to this Court and the appellee Company has filed a motion to dismiss upon jurisdictional grounds, the motion stating that the record herein shows the matter involves an amount far in excess of $2,000.
On Motion to Dismiss
The only theory upon which the appellate jurisdiction of this Court is attacked is with respect to the “amount in dispute or fund to be distributed.” Consequently, unless it is affirmatively established by the record that the charging of the membership fee was worth $2,000 or more to the Company’s business in this State, we are the proper Court wherein the appeal should be considered.
Our appellate jurisdiction is set forth in Article 7, Section 29 of the LSA Constitution of 1921, providing:
“Original and appellate and concurrent jurisdiction. — The Courts of Appeal, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which jurisdiction shall extend to all cases, civil and probate, of which the Civil District Court for the Parish of Orleans, or the District Courts throughout the State, have exclusive original jurisdiction, regardless of the amount involved, or concurrent jurisdiction exceeding one hundred dollars, exclusive of interest, and of which the Supreme Court is not given jurisdiction, except as otherwise provided in this Constitution, and all appeals shall be both upon the law and the facts.”
The appellate jurisdiction of the Supreme Court is found in Article 7, Section 10 of the LSA Constitution of 1921. In the case of First National Life Insurance Co. v. City of New Orleans, La., 48 So.2d 145, a comprehensive review of that jurisdiction is found. Therein a declaratory judgment was sought to interpret the provisions of a contract. The subject matter of the contract was admittedly worth $275,000. The Supreme Court held that regardless of the value of the property involved the value of the rights sought to be adjudicated had not and probably could not be established; that the only matter presented to the Court was the question of the validity of the proposed sale without advertisement. The case was ordered transferred to the Court of Appeal.
There áre two transcripts in this case. One was made before the Louisiana Insurance Rating Commission, and the other in the District Court. LSA-Revised Statutes 22:1363 provide that both transcripts, became a. part of this record. Neither transcript shows the value of the right to charge the membershp fee, which is the subject *891 matter of this appeal. The right of the Company to charge this fee cannot, be said to be worth any certain amount as it is conjectural as to how many policies would be sold in this State by the Company if its proposed plan be allowed. The appellee suggests that the average term of its policies may be computed to show how many policies can be assumed to be in effect in the future. This is too uncertain upon which to base a jurisdictional amount.
At present the Company is not using the membership fee and it is improbable what the value of its use would amount to. The fee is proposed to be charged only upon the original sale of a policy. Consequently the policies now in effect would not be affected. Appellee maintains that since it will discontinue the payment of dividends to existing policy holders if granted the right to charge an initial membership fee that the amount of such dividends would establish jurisdiction. The payment of dividends is not in dispute here. Consequently this argument is unsound.
Jurisdiction was sought to be established in the Supreme Court by an affidavit in Fireside Mutual Life Insurance Co. v. Martin, 220 La. 794, 57 So.2d 687, 688. In deciding that it had not jurisdiction the Supreme Court used the language following:
“ * * * This conclusion of affi-ants, evidently, is predicated on a sin-, cere belief that possibly a loss at least to that extend will result-to the company from the change. However, an affidavit to a similar effect was, considered in Louisiana Wholesale Distributors Association, Inc., v. Rosenzweig, 212 La. 1015, 34 So.2d 58, and with reference to it we said: ‘We do not in any way question the good faith of the affiant in this affidavit, but it is obvious that the loss claimed is based on conjecture as to future events and conclusions of the affiant from-such conjecture. Undoubtedly such presumptions cannot inject an “amount in dispute or * * fund to be distributed” in excess of $2,000 into this injunction proceeding.’” See also Prampin v. Southern Chemical Works, Inc., 218 La. 392, 49 So.2d 737.
Since the Record herein fails to disclose an “ ‘amount in dispute or * * * fund to be distributed’-” which would properly lodge this appeal in the Supreme Court, the motion to dismiss is overruled.
TATE, Judge.
The-foregoing opinion overruling pi; in-tiff-appellee’s motion to dismiss the appeal contains a statement of all relevant facts.
The sole question before us on appeal is whether the Louisiana ■ Insurance Rating Commission (hereinafter denoted as “Commission”), defendant-appellant, exceeded its authority in refusing to. permit the' State Farm.Mutual Automobile Insurance. Company (hereinafter denoted as “State Farm”), plaintiff-appellee, to- charge an initial membership fee to its policyholders in addition to what State Farm denotes as premium. .
The resolution 'of this controversy involves interpretation’ and correlation of the various statutory provisions in our Louisiana Insurance Code, LSA-R.S." 22:1 ef seq., a comprehensive áttempt at regulation of all phases of the insurance industry doing business in Louisiana.
State Farm,, represented by extremely able and eloquent counsel, urges that its plan will lower over-all liability insurance costs by charging a “non-recurring separate initial membership fee at the inception of the policy”, , thus - eliminating (insofar as renewals are concerned) the 25% of the annual premium of other insurance companies allocated for “production costs” (chiefly, agents’ commissions). State Farm urges that the Louisiana Insurance Code not only does not prohibit such single initial membership fee plan, but specifically authorizes same. .
In the Commission’s view, however, State Fárm’s proposed membership fee plan ot selling insurance in effect simply splits üp an ordinary premium, arbitrarily calling part of it a membership fee, to which the “pro *892 duction, costs” of new' business áre allocated. Since these productions costs are a component of insurance rates fixed by the Commission pursuant to its statutory authority, State Farm’s proposed membership fee according to the Commission is a portion of the premium charged the policyholder, not a charge “in addition thereto”. To permit such arbitrary labelling of any component of the premium by the insurance companies themselves would in the Commission’s view destroy statutory rate regulation.
The Commission further argues that to permit State Farm to recoup the permitted premium reductions by charging an almost equivalent amount under another name (“membership fee”) for the first six months would countenance deception of the public and misrepresentation and authorize conduct prohibited by' other sections of the Insurance Code. The Commission also points out in brief and also -in questioning before the Commission hearing that arbitrary exclusion of the membership fee from the gross amount of premiums collected would enable State Farm to evade payment of State premium taxes and to evade State regulation of reserves required t.o protect policyholders and the public, both of which are based on the gross premiums charged.
As shown by the hearing, Louisiana is one of the very few States where a public regulatory commission determines and fixes insurance rates, rather than merely approves schedules filed by the insurance companies. (See also G. Frank Purvis, “The Insurance Code of Louisiana”, 22 La.R.S., pages xxxix-xl., note preceding LSA-R.S. 22:1 et seq.) The purpose of rate regulation in Louisiana is “to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory,” Section LSA-R.S. 22:1402 (see Appendix I below). It is the “duty of the Casualty and Surety Insurance Division with the approval of the commission, to ascertain, determine and fix rates to be charged on all casualty insurance risks”. LSA-R.S. 22:1406, subd. A (See Appendix II).
Upon written application, the Casualty and Surety Division or the full Louisiana Insurance Rating Commission may grant a deviation (decrease or increase) if it finds such rate modification “to be justified”; or it shall deny such application if it finds that "the modification is not justified or that the resulting premiums [to] be excessive, inadequate or unfairly discriminatory”; see LSA-R.S. 22:1410, subd. A (2) and B (Appendix III).
Pursuant to its statutory authority, the Division adopted the following nationally approved rating formula for determining and fixing casualty rates:
“General administration 7.4%
Inspection, exposure, audit and bureau .6%

Total production costs 25.0%

Taxes, licenses and fees 3.7%
Profit and contingencies 2.5%
Total service and overhead 39.2% Expected loss ratio 60.8%
Total 100.0%”
The italicized “Total production costs, 25%”, represents the agent’s commission and incidental underwriting costs such as investigation, etc.
State Farm contends that elimination of these production cost charges is the basis for its reduction in rates by 25% from the standard manual rate (which reduction was granted by a majority of the Commission). The single initial membership fee paid at the inception of the policyholder’s coverage with State Farm is devoted solely to production (or “acquisition”) costs of the coverage, and according to State Farm their policyholders thus avoid this ordinarily recurrent charge (or renewal commission).
Under State, Farm’s proposed plan for writing insurance, each policyholder initially is required to pay a separate membership fee for each general class or kind of automobile insurance (for each motor vehicle) which he purchases, varying from a proposed fee of $3 for $100-deductible collision *893 coverage to $9 for bodily injury and property damage liability coverage. Once a membership fee is paid for any given coverage, it is never required to be paid again, although the insured may later change the car to which the coverage applies, or drop and later reinstate his insurance.
The Company finds and the Commission denies statutory authorization for use of the proposed membership fee plan in Part XXX Insurance Code (“ * * * Rate Regulation”) under the terms of LSA-R.S. 22:1404, “Making of rates”, especially:
“* * * (2) .Rates shall not be excessive, inadequate or unfairly discriminatory.
* * . .* * * *
“(5)- Except to the extent necessary to meet the provisions of paragraph (2) of this Section, uniformity among insurers in any-matters within the scope of this Section is not required nor prohibited. No tiling in this Code shall-be construed to prohibit any insurer from deviating upon proper approval under this Part from- any rate. established by a rating organization or the commission, provided the rate used is adequate, or to prevent any insurer upon proper approval under this Part by the proper division from issuing policies for periods of time and at rates approved by the division; or from charging in addition to the'premium a separate initial membership, policy or inspection fee or other similar charge.
“(6) The term 'rate’ as used in this Part shall include, as the context may require, either the premium to be paid by or charged to the insured for insurance, including fees and charges referred to im paragraph (5) of this Section, or the elements and factors forming the basis for the determination of the premium, including fees and charges referred to in paragraph (5) of this Section.” (Italics ours.)
The impasse between the Company and the Commission over the meaning of this section arises because while subsection 5 plainly permits authorization of a “separate initial membership” fee "in addition to” the premium, subsection 6 immediately thereafter just as plainly provides that for purposes of rate regulation the rate or premium shall include these identical membership fees. These consecutive subsections seem contradictory in that the membership fee is simultaneously referred to as “in addition to” and also as a part of the premium.
The Commission would have us ignore subsection S by saying that the “separate initial membership * * * fee” not prohibited is one that provides membership in an organizátion but which is not a substitute for one of the components of the premium, such as (according to argument of counsel) the membership fees of the Farm Bureau organization. But we, like the able and conscientious District Judge, are impressed by the uncontradicted testimony of actuarial and insurance experts produced by defendant to the effect that the only “separate initial membership * * * fee” knojvn to the insurance industry is one'such as used by ‘ State Farm in thirty-six' States. (It is prohibited in a few other States, including Texas and Wisconsin.) Further, LSA-R.S. 22:1456, “Particular provisions prevail”, provides:
“Provisions of this Code relating to a ’ particular kind of insurance or a particular type of insurer or to a particular matter shall prevail over provision's relating to insurance in general, or to insurers in general, or to such matter in' general.”
As the record now stands, we must accept this uncontradicted expert testimony, and we find that since the Legislature is presumed to mean something by inclusion of each clause, under, subsection (5) the Louisiana Insurance Code does not prohibit approval of a separate initial membership fee if “justified” and if complying with other requirements of the Louisiana Insurance Code.
. But State Farm would have us ignore subsection (6) above and other pro *894 visions of the- Insurance Code, such as in LSA-R.S. 22:5 “Definitions”, - Subsection (7): ■ ■
“ ‘Premium’ as used in this Code means all sums charged, received or deposited as' consideration for the, purchase or continuance of insurance for a definitely stated term, and shall include any assessment, membership, policy, survey, inspection, service or similar fee or charge made by an insurer as a part of the consideration for the purchase or continuance of insurance.”
These plainly provide that the membership fee forms part of what in the Code is denoted as the “premium”. State Farm argues that LSA-R.S. 22:5(7) supra excludes from the premium the proposed membership fee because not a charge for a definitely stated term. We feel, however, that the definition indicates that the “premium” includes: (a) all sums charged for the purchase of insurance for a definitely, stated term; and (b) any membership fee charged by an insurer as a part of the consideration for the purchase of insurance, without reference to whether being for a definitely stated term or not.
We are reinforced in this conclusion by State Farm’s expert testimony that the membership fee proposed by it is the only form of membership fee known to the insurance industry. The Legislature is presumed to mean something when it provides that such membership fees shall be included in the premium. The Legislature plainly intended membership fees such as here proposed to be a-part,of the premium, not a charge in addition thereto.
But in the particular context of LSA-R.S. 22:1404(5) above, the specialized meaning assigned to “premium” is that used in many States without Louisiana’s statutory' 'requirement that membership fees shall be included in the premium — that is, á sum charged for the purchase of insurance for a definitely stated term.
Thus LSA-R.S. 22:1404(5) Is not contradictory with other sections of the Insurance Code. It simply provides that the Code does not prohibit the Commission (for purposes of rate regulation)• from approving a rate based on charging (1) a base rate for coverage for specific periods, and (2) an - additional rate or separate charge for the initial period (i. e., the charge represented by the membership fee).
But, similarly, this section does not mandatorily require the Commission to approve any membership fee plan proposed by an insurer, or even to permit the -insurer to label this portion of the premium charge as a “membership fee in addition to” the premium, as requested by State Farm.
The Commission, with its specialized knowledge of rate making and under its statutory duty to protect the public, unanimously found that the membership fee plan as presented by State Farm was not “justified” as required under LSA-R.S. 22:1410, subd. B because against the public interest being “misleading, contrary to the public welfare, contrary -to law and unjustified”. The Commission stated: .“The company has already demonstrated how it would take advantage of the so-called ‘membership fee’ if it were granted, and the commission finds, that applicant should not be allowed to advertise a 25% reduction in premiums while actually employing a unique play on words to designate a part of the premium as a ‘membership fee’.’.’ While' it is true that the Secretary of State, not the Commission, has the responsibility and power to enjoin “any unfair or- deceptive act or practice prohibited”, LSA-R.S. 22:1215, we feel that the Commission could properly take notice of the large" newspaper advertisements “informing” t the public of State Farm’s membership fee plan which in the Commission’s opinion were misleading. The Insurance Code is an integrated whole. The Commission is not required'to leave the stable door unlocked until the horse is stolen.
Furthermore, the company in its proposed policy and application ■ forins specifically stated that the so-called “membership fee” is in addition to'the premium. It is needless to state that State Farm is- unable by the self-help of its own peculiar definition to *895 disguise what under Louisiana Statutes is part of the consideration paid for the insurance. . ■ .
State Farm’s proposed single membership fee plan and insurance applicátion and contract violates LSA-R.S. 22:627, (in Part XIV, Insurance Code, “The Insurance Contract”) providing that “The premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof,” which section also makes it a criminal violation for any insurer,. its agent, employee, or other representative to charge or receive “any fee, compensation, or consideration for insurance which is not included in the premium specified in the policy.” (See Appendix IV for complete text.)
The public policy announced by the Legislature in LSA-R.S. 22:627 above is that the stated premium shall include all charges for issuance of insurance, and the penalty for violation of this mandatory requirem °nt may be fine up to two thousand dollars and/or imprisonment up to one year; LSA-R.S. 22:1455. These criminal penalties indicate the seriousness with which the Legislature regarded attempts in quoting the “price” to the consumer to disguise or conceal portions of the normal costs of obtaining insurance (such as “production costs”), founded perhaps on the historic ruinous consequences to sound insurance practices and rates of deceptive and cutrate premium competition. The average consumer does not possess the specialized knowledge and skill to analyze insurance rates and charges to know how much he is paying for what protection, and the legislative requirement that the “price” to the consumer must include all charges paid by him is indicative of the legislative concern for his protection in this regard. The “membership fee” insurance application, contract, and plan proposed by State Farm thus violates this stringent legislative requirement that all charges of insurance must be 'included within the stated premium'for purposes of quoting a “price” to the consumer.
State Farm’s astute counsel suggest that the membership fee is not “consideration charged for insurance” but charged instead for the privilege of applying for insurance with State Farm at its reduced rates. How-é.ver, as admitted by one of State Farm’s witnesses: “unless he- (the applicant) pays a 'membership fee, he cannot become a policyholder in the company”. The cause or consideration for the issuance by State Farm of its insurance contract is not only the sum paid by the policyholder for coverage “for a definitely stated term”, but it is also the sum paid by the policyholder denoted as “membership fee”, see LSA-Civil Code Article 1896.
It is a play on words to state that the policyholder pays this membership fee for the purpose of applying for insurance and not for the purpose of obtaining the insurance. The same amount of money leaves his pocket (the membership, fee and initial premium are collected simultaneously, according to the record before the Commission) with the same identical purpose as when paid to other companies, and is used identically by State Farm as by other companies.
The Commission is certainly not required to authorize illegal conduct proposed by State Farm upon the argument that the Commission’s function is only to determine rates and to let the district attorneys throughout the State fine or imprison State Farm’s agents for issuing the policy in question.
Under the above clear statutory provisions for inclusion of membership fees in gross premiums, it is clear that the two cases cited by State Farm, namely State Farm Mutual Automobile Insurance Co. v. Carpenter, 31 Cal.App.2d 178, 87 P.2d 867, and State Farm Mutual Insurance Company v. Earl, Insurance Commissioner, memorandúm opinion No. 125-696, Circuit Court of the State of Oregon, holding that membership fees for purposes of the insurance premium tax of those two states were not a portion of the gross premium subject to the *896 premium tax, are completely inapplicable in Louisiana. In view of Louisiana’s statutory definition of premiums, membership fees such as are here proposed must be included in the gross premiums for purposes of our Louisiana Premium Tax, as based on the “gross amount of * * * premiums”, see LSA-R.S. 22:1065-22:1076. As correctly pointed out by State Farm, however, this objection is not before us at this-time and would not in itself be a ground for the Commission to deny the single initial membership fee plan as proposed by State Farm, as under LSA-R.S. 22:1071-22:1072 the duty to pay these taxes is to the Secretary of State and the Secretary of' State is authorized upon failure to pay such taxes to revoke the authority of the' delinquent tax payer to do business in this State.
For the protection of the public and of the policyholder, the Louisiana Insurance Code provides' that the insurers shall set up “unearned premium reserve[s]” .and “loss reserves”, LSA-R.S. 22:891 and 22:896. These reserves are based upon percentage of gross or earned premiums. State Farm clearly indicated before the Commission its intention not to set up any reserves based upon “membership fees” received because it incurs no liability therefrom. Nevertheless, all other companies are required to set up reserves on the basis of the total premium charged (including “production costs”).
So important are these reserve requirements, in Wisconsin State Farm was permanently enjoined from doing business in that State, because the single initial membership fee prevented computation of the unearned premium reserve as required by the statute, Duel v. State Farm Mutual Automobile, Insurance Company, 240 Wis. 161, 1 N.W.2d 887, rehearing denied 2 N.W.2d 871; State Farm Mutual Automobile Insurance Company v. Duel, 244 Wis. 429, 12 N.W.2d 696. While the Wisconsin statutory formula is similar to that of Louisiana’s, in Louisiana: the Secretary of State is given discretion to require other methods of computation to produce adequate reserves, LSA-R.S. 22:-891, 22:896, 22:902.
Thus again, although the Secretary of State and not the Commission has the statutory duty of enforcing the reserve requirements, the Commission is not required to approve a plan which as proposed required finding that the “membership fees” constitute a charge additional to that of the premium, thus enabling State Farm to evade reserve requirements enacted to protect the people of Louisiana.
Considering therefore the Louisiana Insurance Code as a whole, it appears that the Commission’s rejection of State Farm’s membership fee plan as proposed was justified. The presently proposed separate initial nonrecurrent membership fee plan was illegal under Louisiana statutes because the membership fee must be treated as part of the premium for the purpose of quoting a “price” to the insured or the public. As proposed, further, the membership fee plan was designed to evade reserve requirements and premium taxes of Louisiana.
However, we feel that a membership fee plan clearly labelling the membership fee.as a cost of the initial premium of the insurance, but permitting the policyholder the benefit of the saving by eliminating the “production costs” on renewals is expressly not prohibited by the Statute.
In fact, according to the testimony adduced at the hearing before the Commission, this is in effect the present policy of State Farm, since although the policyholder upon the initial coverage pays the full premium, oh renewals by receiving credit for dividends in Louisiana, the policyholder is réquired to pay only as net premium the amount owing after elimination according to the Company of the amount known as production costs.
State Farm appealed only from the portion of the Commission decision refusing permission to charge the membership fee additionally to reduced premium rates permitted. It failed to appeal from the order of the Commission permitting it to reduce its rates by 25% and to omit the surcharge on short term policies. While it has stated in brief and in argument that it *897 cannot afford such reductions without at the same time receiving permission to increase its charges by an additional membership fee charge, State Farm failed by answer to the appeal or otherwise to request any relief should permission be denied to charge the membership fee. We will therefore in our decree simply reinstate the Commission ruling in full, without prejudice to State Farm to resubmit a membership fee plan which would, comply with the other requirements of our Louisiana statutes regulating the insurance industry.
For the reasons ábove-assigned, the judgment of the trial court herein is reversed insofar as it permitted the State Farm Mutual Automobile Insurance Company to charge its policyholders an additional membership fee; and the decision of the Louisiana Insurance Commission is affirmed, permitting State Farm Mutual Automobile Insurance Company to reduce its premiums by 25% and to omit the surcharge otherwise required on short term policies, but refusing plaintiff Company authority for the additional charge of a portion of the premium in the guise of a “membership fee”. This is without perjudice to plaintiff to submit according to law a single initial membership fee plan complying with the statutory requirements of stating the entire consideration charged as premium to the policyholder.
Reversed and rendered.

Appendix

Since this is a case of first impression in the United States on the relationship of the “membership fee” to the “premium” with regard to insurance rates, we are setting forth in this appendix the full text of some of the statutory sections in the context of which this decision is to be understood.
Appendix I.'
LSA-R.S. 22:1402: “Purpose of rate regulation
“The purpose of this Part is to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate, or unfairly discriminatory, and to authorize and regulate co-operative action among insurers in rate making and in other matters within the scope of this Part. . Nothing in this Part is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit or encourage, except to the extent necessary to accomplish, the aforementioned, purpose, uniformity in insurance rates, rating systems, rating plans or practices. This Part shall be liberally interpreted to carry, into effect the provisions of this Section.”
Appendix II.
LSA-R.S. 22:1406: “Specific duties of Casualty and Surety Insurance Division .
“A. It shall be the duty of the Casualty and Surety Insurance Division with the approval of the commission, to ascertain, determine and fix rates to be charged on all casualty insurance risks, including vehicle insurance, within the scope of this Part. Such rates shall be ascertained, determined and fixed in accordance with the provisions of this Part.
“B. The rates so fixed by the Casualty and Surety Insurance Division shall be mandatory and no casualty or other insurer shall insure casualty risks located in this state, either directly or through reinsurance, except in compliance with the rates fixed by the commission and in accordance with the rules and regulations formulated and adopted with respect thereto in accordance with this Part; provided that any such insurer may apply for a deviation from such rates in accordance with R.S. 22:1410.”
Appendix III.
LSA-R.S. .22:1410: “Deviations
“A. Every member of or subscriber to the Louisiana Rating and Fire Prevention Bureau or other rating organization shall adhere to the rates and filings made on its behalf by such organization, and every insurer shall adhere to the rates fixed by the commission or proper division, except that:
*898 ♦ , * * * * ■ *
“(2) In the case of casualty insurance to which this Part applies, any such insurer may make written applica:tion to the division for permission to file a Uniform percentage decrease or increase to be applied to the premiums produced by thé rating system prescribed or permitted-by the commission for a kind of insurance, or for a class of insurance which' is found by the division to be a proper rating unit for the application of such uniform percentage decrease or increase, or for a subdivision of a kind of insurance (1) comprised of a group- of manual classifications which is treated as a separate unit for rate-making purposes, or (2) for which separate .expense, provisions are included in the rating system prescribed or permitted by the commission. Such application shall specify the basis for the modification, and’ shall be ac-r companied by the data upon which the applicant relies.
“B.. The division concerned shall set a time and place for a hearing before the commission at which the insurer and' such rating organization, if any, may be heard, and shall give them not less than ten days’ written notice thereof. In the event the division is advised by the insurer or rating organization that it does not desire a hearing it may, upon the consent of the applicant, waive such hearing. The division shall issue an order permitting the modification for such insurer to be filed if it, or the commission after hearing, finds it to be justified, and it shall thereupon become effective. It shall issue an order denying such application if it, or the commission after hearing, finds that the modification is not justified or that the resulting premiums would be excessive, inadequate or unfairly discriminatory. The insurer so denied without a hearing may then apply to the commission for a hearing thereon notwithstanding its previous waiver of such hearing. Each .deviation permitted to be filed shall be effective for a-period of one year .from the date of such permission unless terminated sooner- with the approval- of the commission.”
Appendix IV.
LSA-R.S. 22:627: “Stated" premium must include all charges
“A. The premium stated in the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof, except that, in any subsequent modification of the policy, the insurer may require that evidence of insurability be furnished at the insured’s expense.
“B. - No insurer or its officer, employee, agent; solicitor, or Other repre- ■ sentative shall charge or receive any fee, compensation, or consideration for insurance which is not included in the premium specified in the policy.
“C. Each violation of this Section is a misdemeanor.”