885 So.2d 1248 (2004)
Alan CACAMO, Individually and on Behalf of all Other Similarly Situated
v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY.
Monique Poirrier, Individually, and on Behalf of all Others Similarly Situated
v.
Progressive Security Insurance Company.
Edith Porobil, Individually, and on Behalf of all Others Similarly Situated
v.
Allstate Insurance Company.
Benjamin R. Antin, Individually, and on Behalf of all Others Similarly Situated
v.
Allstate Indemnity Company.
Michael A. Laforte, Jr., Individually, and on Behalf of all Others Similarly Situated
v.
State Farm Fire and Casualty Company.
Nos. 2004-CA-0074, 2004-CA-0075, 2004-CA-0076, 2004-CA-0077, 2004-CA-0078.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 2004.
Paul H. Due', Donald W. Price, Due', Price, Guidry, Piedrahita & Andrews and Andre P. LaPlace, Baton Rouge, LA, and Patrick W. Pendley, Stan P. Baudin, Plaquemine, LA, For Plaintiffs/Appellants.
Larry M. Roedel, Brent J. Bourgeois, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, LA, for Defendant/Appellee, Liberty Mutual Fire Insurance Company.
Jeffrey Lennard, Mark Hanover, Sonnenschein Nath & Rosenthal, Chicago, IL, and Allen D. Darden, H. Alston Johnson III, Jane H. Barney, Phelps Dunbar, L.L.P., Baton Rouge, LA, for Defendant/Appellee, Allstate Indemnity Company.
J. Wendell Clark, E'Vinski L. Davis, Adams and Reese, LLP, Baton Rouge, LA, *1250 for Appellee, Progressive Security Insurance Company.
Wayne J. Lee, Michael Q. Walshe, Jr., Stone Pigman Walther, Wittman L.L.P. New Orleans, LA, for Defendant/Appellee, State Farm Fire and Casualty Company.
(Court Composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, and judge MAX N. TOBIAS, JR.).
*1249 Judge MAX N. TOBIAS, JR.
These consolidated cases are before the court following the granting of summary judgment for the defendants/appellees, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Progressive Security Insurance Company ("Progressive"), Allstate Insurance Company ("Allstate Insurance"), Allstate Indemnity Company ("Allstate Indemnity"), and State Farm Fire and Casualty Company ("State Farm")(hereinafter collectively referred to as "the insurers"). The plaintiffs/appellants, Alan Cacamo ("Cacamo"), Monique Poirrier ("Poirrier"), Edith Porobil ("Porobil"), Benjamin R. Antin ("Antin"), and Michael A. Laforte, Jr. ("Laforte"), ask that the judgments be reversed and the cases remanded for a trial on the merits.
The facts of these cases are substantially the same with respect to all of the insurers. The insurers have plans that allow their insureds to pay premiums on their policies in installments, and the insurers charge additional fees for installment payments. These fees are not set forth in the insurance policies, declarations sheets, or endorsements. Instead, the insurers send the insureds bills for "minimum payments due" that permit the insureds to pay the premium in full or to pay installments, which includes an "installment fee." The insurers contend that the purpose of the installment fees is to offset the costs associated with the administration of the installment plans.
The individual appellants, as class representatives, each filed a separate suit against the insurers[1] for allegedly failing to comply with the provisions of La. R.S. 22:627, which states in pertinent part:
A. The premium quoted by the insurer shall be a specific dollar amount which shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof[.]
* * *
C. Each policy delivered to the insured shall have the full and accurate dollar amount of the premium disclosed on the policy, which shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof[.]
The cases were then consolidated and the appellants were afforded an opportunity to conduct discovery.[2]
*1251 Each of the insurers filed motions for summary judgment, which were heard on 29 September 2003. The trial court granted the motions, stating at the hearing that it was following the First Circuit's decision in Blanchard v. Allstate Insurance Co., 99-2460 (La.App. 1 Cir. 10/18/00), 774 So.2d 1002 (en banc), writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 997.[3] This appeal followed.
The primary issue presented for review by this court is whether the trial court erred in finding that the service fees charged by the insurers for installment payments are not within the scope of La. R.S. 22:627. Cacamo has also raised a separate claim against Liberty Mutual, which is whether the amount of fees charged are in excess of the rates allowed by the Louisiana Insurance Rating Commission ("LIRC").
Since at least 1978, the LIRC has permitted an insurer to offer its policyholders the option of paying a premium either in one full, lump sum payment or through installments. If the insured chooses to pay in installments, a small fee is charged. These fees have been submitted to and approved by the LIRC and are not included in the premium quoted to the insured or listed in the policy. Instead, the fees are listed as an option on the bill the insured receives from the insurer.
The Blanchard case began when Ms. Blanchard and others filed suit in the Eighteenth Judicial Court for the Parish of Iberville against Allstate Insurance Company and several other insurers seeking a declaratory judgment that La. R.S. 22:627 requires insurers selling property and casualty insurance in Louisiana to include any finance, service, or installment charges or fees in the premium stated on the policy. In response, the insurers filed a petition for declaratory relief with the Louisiana Commissioner of Insurance seeking a judgment that the insurers' method of disclosing installment fees did not violate La. R.S. 22:627. Blanchard, 99-2460 at p. 2, 774 So.2d at 1003.
The hearing officer for the insurance commissioner ruled that an installment fee is not part of the consideration charged for the procurement of the insurance and, thus, is not required to be included in the quoted premium. Instead, he found they were "merely an intramural arrangement for the convenience of the insured, with the insured remaining free to accept or reject it." Id. at p. 3, 774 So.2d at 1003. The Commissioner adopted that ruling in its entirety. The insureds then filed a petition for judicial review in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. The Commissioner intervened in that suit in support of his ruling and on behalf of the insurers.
The district court reversed the Commissioner. The court found that the fees were "perfectly reasonable and in line" and promoted public policy by aiding those with limited financial means to obtain insurance. Nevertheless, it held that the installment fees were charges for procuring insurance that must be included in the premium quoted and must be listed on the policy. The insurers appealed. Id.
In an en banc decision, the First Circuit reversed the trial court. It first reviewed both the hearing officer's ruling and the decision of the trial court:
The hearing officer reasoned that because premium was defined by the Louisiana Insurance Code as a fee charged as consideration for the purchase or continuance of insurance, and because insurance *1252 is defined in Louisiana Revised Statute 22:5(9)(a) as a contract whereby one undertakes to indemnity [sic] another or pay a specified amount upon determinable contingencies, installment fees could not be considered premiums because they were not paid as consideration for an indemnity contract. Instead, he analogized the fees to interest on a promissory note given for insurance and found this voluntary arrangement for the insured's convenience did not fall within the ambit of Revised Statute 22:627.
The district court took a different view. It focused on the language of Revised Statute 22:627 that states the premium quoted shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement of insurance. (Emphasis added.) The court stated that the inclusion of the word premiums in the definition of premium quoted indicated that the phrase was somewhat broader than the definition of premium set forth in Revised Statute 22:5(13). The court found that since an insured could not obtain insurance in installments unless he pays the installment fee, the fee was charged for the procurement of insurance. The court ruled that the fees were required to be included in the premium quoted and disclosed on the policy.
Although the district court found an insured could not obtain insurance in installments without paying the installment fees, it did not find that an insured could not obtain insurance without paying them. Defendants contend the fees are neither consideration for the insurance contract nor consideration for the procurement of the insurance. We agree. Plaintiffs rely on State Farm Mutual Automobile Insurance Company v. Louisiana Insurance Rating Commission, 79 So.2d 888 (La.App. 1st Cir.1955), in which we found that the insurer was obligated to treat a membership fee as part of the premium when quoting a price to the insured or the public. But that case is factually distinguishable from the present case because one could not become a State Farm policyholder without paying the membership fee. In the case sub judice, payment of the installment fees is not a prerequisite to obtaining coverage.
Insurance, as defined in Revised Statute 22:5(9)(a), is an indemnification contract. The installment fees are paid not to procure an indemnification contract, but for the privilege of paying the premium over time.
Based on our analysis of the statutory language and definitions, we are convinced that these fees need not be disclosed on the policy. We find further support for our conclusion when we consider the purpose of Revised Statute 22:627. When one considers the statute is a full disclosure of premium statute, enacted to prevent nondisclosure of hidden charges and to allow consumers to shop for insurance by making knowledgeable comparisons of premiums, it is clear that the fees need not be disclosed on the policy.

Id. at pp. 6-7, 774 So.2d at 1005-06 (emphasis in original). Thus, the First Circuit concluded that the district court committed legal error in ruling that installment fees must be included in the premium quoted to the insured pursuant to La. R.S. 22:627. Id. at p. 8, 774 So.2d at 1006.
Three of the judges of the First Circuit dissented from the decision, relying on the First Circuit's earlier interpretation of "premium" in State Farm Mutual Automobile Insurance Co. v. Louisiana Insurance Rating Comm'n, 79 So.2d 888 (La.App. 1 Cir.1955). In State Farm, the court treated La. R.S. 22:657 as a consumer-protection statute, noting:

*1253 The average consumer does not possess the specialized knowledge and skill to analyze insurance rates and charges to know how much he is paying for what protection, and the legislative requirement that the `price' to the consumer must include all charges paid by him is indicative of the legislative concern for his protection in this regard.
79 So.2d at 895. The court then found that a membership fee proposed by the insurer was illegal under the law because the insurer did not intend to include the fee as part of the premium when quoting a "price" to the insured or the public. Id. at 896.
Relying on State Farm, the Blanchard minority stated:
Today, LSA-R.S. 22:627(C) still provides that the premium disclosed on the policy shall be inclusive of all fees, charges, premiums, or other consideration charged for the insurance or for the procurement thereof. (Emphasis added.) The majority has overlooked that all important conjunction or. While the installment fees may not be consideration for the insurance contract itself, they are consideration for the procurement of that insurance as they must be paid if an insured wishes to obtain a policy and pay in installments. Therefore, in order to protect the consumer from hidden charges or fees in the premium quoted, as anticipated by the legislature in enacting LSA-R.S. 22:627, the installment fees must be included in the premium quoted.
99-2460 at pp. 1-2, 774 So.2d at 1006-07.
The insurers urge this court to follow Blanchard, while the appellants maintain that Blanchard is erroneous and an "anomaly," running contrary to legal authority in the rest of the country. In the alternative, the appellants urge the court to reverse, in part, the summary judgment in favor of Liberty Mutual, whose fees in some instances exceeded the installment fees approved by the LIRC.
We first address the question of whether one of the claims asserted by Cacamo against Liberty Mutual is res judicata. Cacamo was a plaintiff in the cases decided by the First Circuit, see Cacamo v. Liberty Mutual Fire Ins. Co., 99-2512 (La.App. 1 Cir. 10/18/00), 774 So.2d 1013, writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 998, in which he asserted that installment fees charged by Liberty Mutual are "premiums." As conceded by counsel during the oral argument of this matter, this claim has already been litigated and decided in favor of Liberty Mutual. However, Cacamos claim that Liberty Mutual has charged more than $66.00 per year in installment fees remains before the court.[4]
The insurers' respective installment plans are as follows:
In order to obtain insurance from Progressive, a prospective insured contacts a Progressive agent and provides application and underwriting information. The applicant is typically quoted an insurance premium after submitting the application. After the application is processed, a policy and declarations page are sent to the insured.
Progressive provides guidelines to its agents, which include policyholders' options for payment of premiums through installments. The payment option information is provided to an insured during *1254 the application process once a premium has been quoted. It is not mandatory that an insured utilize the installment plan in order to obtain insurance from Progressive. Neither the policy nor declarations page discloses the amount of any installment fee. However, as part of the application package provided to the insured, a proposed payment schedule is included if a policyholder elects to pay premiums in installments, rather than as a lump sum. The payment schedule specifically states that installment payments will include a $6.00 installment fee per payment.
At any time throughout the policy period, a policyholder utilizing the installment plan may elect to pay the remaining balance and thus avoid any further installment fees. However, the installment plan is not required by the Louisiana Insurance Code and is provided as a convenience to policyholders.
Allstate Insurance's and Allstate Indemnity's installment plan is similar to Progressive's. When an Allstate Insurance or Allstate Indemnity insured initially procures insurance, the insurer sends the insured a complete copy of the policy, including a declarations page stating the full amount of the premium. Upon receiving the first bill, the insured is presented with payment options set forth on the bottom of the bill. The first option is to pay the premium in full, as set forth on the declarations page. If this option is selected, the insured never pays an installment fee. Only if an insured elects to pay less than the full amount of the premium will Allstate Insurance or Allstate Indemnity charge an installment fee. At any time, the insured may elect to pay the balance in full and avoid paying any additional fees.
Like the other insurers, Liberty Mutual also offers its policyholders the option of paying insurance premiums over time. The prospective insured initially completes an application form, which references the installment plan payment option. The application form states the insurance premium amount, but not the exact amount of the installment fees.
Liberty Mutual later issues a policy to the insured, including the declarations page, the policy jacket, and any applicable endorsements. It does not disclose the fees charged for the installment plan because not every policyholder participates in the plan.
The initial billing statement explains the installment plan option. Prior to 2001, the billing statement required a minimum down payment of 15% of the premium. Thereafter, policyholders electing to participate in the installment payment plan paid a fee equal to 0.75% per month in the outstanding balance. This equaled a 9% annual percentage rate ("APR") charge. In 2001, the installment payment plan fee was changed to a flat fee of $3.00 per installment. As with the other installment plans, Liberty Mutual's policyholders can pay the remaining balance at any time.
State Farm offers the State Farm Payment Plan ("SFPP"), which is not dissimilar from the other plans. When State Farm issues a new insurance policy, the premium as shown on the declarations page of the policy is immediately due. This premium is determined before, and independent of, the insured's decision to participate in the SFPP.
All insureds electing to participate in the SFPP pay a one-time $2.00 set-up charge and then $1.00 per installment. If the insured elects to pay by electronic funds transfer, there is no charge other the initial $2.00 set-up fee. If the insured signs onto the SFPP, other policies can be placed on, or removed from, the SFPP with no change in the installment fee.
State Farm does not reflect the installment fee on the face of the policy. An *1255 insured can elect to join the SFPP either with a new policy or any policy renewal. Brochures, available through State Farm agents, describe the SFPP to insureds and prospective insureds, including the amount of the fee. An insured using the SFPP signs a separate agreement and selects a payment mode. The statements sent to the insured expressly disclose the installment fee separate from the premium.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230. The interpretation of a statute is a question of law, which may be decided by summary judgment. MeritPlan Ins. Co. v. DeSalvo, XXXX-XXXX, p. 4 (La.App. 4 Cir. 3/24/04), 871 So.2d 461, 464; Levy v. Vincent, XXXX-XXXX, p. 3 (La.App. 3 Cir. 7/18/01), 796 So.2d 34, 36. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and renders judgment on the record. Gonzales v. Xerox Corp., 320 So.2d 163, 165 (La.1975).
As stated by 1 Couch on Insurance, § 1:6:
Insurance can be, and has been, defined in numerous ways, but these variations are primarily semantic. Essentially, insurance is a contract by which one party (the insurer), for a consideration that usually is paid in money, either in a lump sum or at different times during the continuance of the risk, promises to make a certain payment, usually of money, upon the destruction or injury of "something" in which the other party (the insured) has an interest. The specific "thing" that must be destroyed or injured in order to trigger the insurer's obligation varies according to the nature of the contract. In fire insurance and in marine insurance the thing insured is property; in life or accident insurance it is the life or health of the insured. Other common definitions of insurance are (1) a contract to pay a sum of money upon the happening of a particular event or contingency; (2) indemnity for loss in respect of a specified subject by specified perils; (3) an undertaking by one party to protect another party from loss arising from named risks, for the consideration and upon the terms and under the conditions recited; (4) a contractual security against anticipated loss where the risk of loss is occasioned by some future or contingent event and is shifted to or assumed by the insurer, with a distribution of the risk of loss by the payment of a premium or other assessment into a general fund; and (5) a contract whereby one party promises for a consideration to indemnify the other against certain risks. [Footnotes omitted.]
In addition, 1 Couch on Insurance, § 69:1 defines "premium" as "consideration paid an insurer for undertaking to indemnify the insured against a specific peril. The amount of the premium varies in proportion to the risk assumed."
La. R.S. 22:5(13) defines "premium" as
[A]ll sums charged, received, or deposited as consideration for the purchase or continuance of insurance for a definitely stated term, and shall include any assessment, membership, policy, survey, inspection, service or similar fee or charge made by an insurer as a part of the consideration for the purchase or continuance of insurance. The term premium, as used in R.S. 22:636(D) and 637(B), shall not include any assessment, membership, policy, survey, inspection, service or similar fee or charge made by an insurer as *1256 part of the consideration for the purchase or continuance of insurance. [Emphasis added.]
The appellants encourage the court to consider legal opinions from other states to find that the trial court erred in following Blanchard. However, in reviewing the cases cited, the court finds them easily distinguishable and, thus, unpersuasive. Two of the cases involve the interpretation of a state statute, while the third court was called upon to interpret a provision of its state's constitution. In addition, all the cases concern whether the installment fees are contained within the definition of "gross premiums" for tax purposes insofar as those statutes and constitutional provisions are concerned.[5] Any other language in the opinions is mere dicta.[6]
The only case in Louisiana addressing the issue before the court is Blanchard, supra. The First Circuit found that the installment plan fees were not "premiums," as defined by the Louisiana Insurance Code.[7] While this court is not bound by the opinion, State v. Wolfe, 630 So.2d 872, 883 (La.App. 4 Cir.1993), we find Blanchard's reasoning sound.
The installment fees paid by insureds choosing that option are not for the insurance or for the procurement of insurance as those words are used in La. R.S. 22:5(13) and La. R.S. 22:627. These installment plans are not required by statute and are done solely for the convenience of policyholders who want insurance, but are unable or unwilling for whatever reason to pay the premium in full. Because not every insured utilizes installment payments, it would be inequitable to increase the quoted premium for all policyholders in order to accommodate those persons who are unable or unwilling to pay the premium in one lump sum. Thus, we find that the installment fees are not included in the definition of "premium," found in La. R.S. 22:5(13) and La. R.S. 22:627.
Lastly, the court considers the argument that Liberty Mutual has charged certain policyholders more that the $66.00 per year allowed by the LIRC. On 11 April 1994, the LIRC issued La. Bulletin 94-01, which provides in pertinent part:
For personal lines where an installment plan and/or direct bill plan is utilized for the consumer's convenience, a maximum of (11) eleven installment payments with the maximum charge of $6.00 per installment, totaling $66.00 annually, may be applied to the premium charged. [Emphasis in original.]
Liberty Mutual contends that it has been charging its customers a 9% APR since approximately 1973. In 1980, Liberty Mutual requested that the Department of Insurance allow an increase of its installment fees from 9% APR to 12% APR, which request was denied. However, Liberty Mutual contends that it is not required to conform its pre-existing installment payment plan to the cap of 1980. It further argues that the subsequent guidelines in 1985 and 1994 are to be applied prospectively, i.e., to future submissions only.
We reject Liberty Mutual's argument as to the prospective application of the new guidelines. In the beginning of *1257 Bulletin LIRC 94-01, which was issued to all licensed property and casualty carriers, it states:
The purpose of this bulletin is to inform you that during its regularly scheduled meeting of March 16, 1994, the Louisiana Insurance Rating Commission voted to rescind the existing personal lines installment guidelines and institute the following new guidelines[.] [Emphasis added.]
While the 1994 guidelines may not have applied to installments plans already in existence, i.e., insurance policies previously issued, the court is of the opinion that the 1994 guidelines apply to insurance policies issued on or after 11 April 1994 and to all other policies upon their renewal. Therefore, we find a genuine issue of material fact with respect to the subclass of Liberty Mutual policyholders and reverse that portion of the summary judgment.
Based on the foregoing, we affirm the summary judgments granted in favor of Progressive, Allstate Insurance, Allstate Indemnity, and State Farm. With respect to Liberty Mutual, we affirm the summary judgment in part and reverse in part and remand the matter to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Cacamo sued Liberty Mutual, Poirrier sued Progressive, Porobil sued Allstate Insurance; Antin sued Allstate Indemnity, and Laforte sued State Farm.
[2] The appellants' counsel first filed suit raising these claims against the insurers as a class action in the Eighteenth Judicial District court for the Parish of Iberville. The insurers removed the cases to federal court and also instituted administrative declaratory judgment proceedings against the named appellants before the Commissioner of Insurance. The appellants then filed their respective suits in Orleans Parish. All judicial proceedings were stayed pending completion of the administrative proceedings, which eventually led to the First Circuit's decision in Blanchard v. Allstate Insurance Co., 99-2460 (La.App. 1 Cir. 10/18/00), 774 So.2d 1002 (en banc), writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 997. Following the denial of writs by the Supreme Court, the Iberville Parish cases were dismissed on exceptions of res judicata.
[3] The trial court's oral reasons for judgment were apparently not transcribed and not made a part of the appellate record before us.
[4] Before Liberty Mutual filed its motion for summary judgment, Cacamo filed a supplemental and amending petition requesting a subclass of plaintiffs "who had paid in excess of $66.00 per year" in installment fees be added in the suit against Liberty Mutual. This subclass does not constitute a new group of policyholders, but instead purports to designate a portion of the policyholders already named as plaintiffs.
[5] How Louisiana treats installment fees for tax purposes is not before the court.
[6] We also note that the Attorney General and Insurance Superintendent opinions from other states all concern tax issues. We take no judicial notice of these opinions.
[7] This opinion is held by the Commissioner of Insurance, and resulted after three days of hearings before the Commissioner.