875 So.2d 878 (2004)
Mary CLULEE, Wife of/and Neal Clulee, Homeplace Batture Leasing, Inc., and N/C Materials, Inc.
v.
BAYOU FLEET, INC., et al.
Mary Clulee, Wife of/and Neal Clulee, et al.
v.
St. Charles Parish, Through its Chairman, Terry Authement, et al.
Nos. 04-CA-106, 04-CA-107.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
*880 Joel T. Chaisson, Destrehan, LA, Catherine Leary, Westwego, LA, for Plaintiff/Appellant.
Gustave A. Fritchie III, New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
This is an appeal from a summary judgment rendered in favor of Coregis Insurance Company ("Coregis") on the issue of insurance coverage. For the reasons stated herein, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
The plaintiffs, Mary and Neal Clulee, Homeplace Batture Leasing, Inc., and N/C Materials, Inc. (hereinafter referred to as "Clulee Plaintiffs") filed two lawsuits, which were later consolidated, against several defendants, including St. Charles Parish and certain parish officials in their official capacities ("Parish Defendants").
In the "first lawsuit," which was filed on July 1, 1998, the Clulee Plaintiffs filed a Petition for Damages and a First Supplemental and Amended Petition setting forth numerous claims against the Parish Defendants, including allegations that some of the Parish Defendants, including former Parish President Chris Tregre and former Parish Attorney Randy Lewis, conspired to aid Bayou Fleet in the operation of its sandpit by re-zoning the property in violation of the parish's zoning code. The Clulee Plaintiffs assert that, unlike Bayou Fleet, they had to spend significant funds on their facilities in order to re-zone their property and to satisfy the zoning requirements necessary to expand their operation.
*881 The Petition for Damages and Amended Petition set forth many other claims including, but not limited to, allegations of violations of the Louisiana Unfair Trade Practices Act and violations of the plaintiffs' rights to due process and equal protection under the Louisiana Constitution. The Clulee Plaintiffs contend that the actions of the Parish Defendants have caused them damages and led to litigation in federal court.
In the "second lawsuit," which was filed on January 14, 1999, the Clulee Plaintiffs originally sought a writ of mandamus to St. Charles Parish, its Department of Planning and Zoning, and certain parish officials, ordering them to enforce the St. Charles Parish zoning laws. On August 27, 2001, a First Supplemental and Amended Petition was filed, in which the plaintiffs withdrew their request for mandamus and sought declaratory and injunctive relief, as well as damages caused by the alleged zoning violations.
Coregis issued two separate insurance policies to the St. Charles Parish Council for the period of November 1, 1996 to November 1, 1997. One policy issued was a Commercial General Liability insurance policy,[1] and the other one was a Public Officials and Employees Liability insurance policy.[2] On August 26, 2003, Coregis filed a Motion for Summary Judgment, arguing that it should be dismissed from this litigation, because neither of the policies issued to St. Charles Parish provides coverage for the claims asserted by the plaintiffs. After a hearing on September 10, 2003, the trial court granted Coregis' Motion for Summary Judgment, dismissing it from this litigation with prejudice. It is from this judgment that the Clulee Plaintiffs appeal.[3]

LAW AND DISCUSSION
Appellate courts review summary judgments de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Prince v. K-Mart Corporation, et al., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. Summary judgments are now favored in the law and the rules should be liberally applied. Nutt v. City of Gretna, 00-1864, 00-1865, p. 9 (La.App. 5 Cir. 5/16/01), 788 So.2d 617, 619; Carr v. Wal-Mart Stores, Inc., 00-896 (La.App. 5 Cir. 10/31/00), 772 So.2d 865, 866, writ denied, 00-3247 (La.1/26/01), 782 So.2d 636. It is well settled that a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted, if any, show there is no genuine issue of material fact such that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Ekere v. Dupont Chemical Plant, 99-1027 (La. App. 5th Cir.2/16/00), 757 So.2d 33, 34, writ denied, 00-778 (La.4/28/00), 760 So.2d 1181. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
An insurance policy is a contract between the parties and should be construed by using the general rules of contract interpretation set forth in the Louisiana Civil Code. Mayo v. State Farm *882 Mutual Automobile Insurance Company, 03-1801 (La.2/25/04), 869 So.2d 96. Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. Id. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written. Succession of Fannaly v. Lafayette Insurance Co., 01-1355 (La.1/15/02), 805 So.2d 1134, 1137. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc., 03-422 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, 26; Newby v. Jefferson Parish School Board, 99-98 (La.App. 5th Cir.6/1/99), 738 So.2d 93, 96.
The determination of whether a contract is clear or ambiguous is a question of law. Mayo, supra. Any ambiguity in insurance policy provisions should be narrowly construed to afford coverage. Gottsegen v. Hart Property Management, Inc., 02-129 (La.App. 5 Cir. 5/29/02), 820 So.2d 1138, 1141, writ denied, 02-1776 (La.10/4/02), 826 So.2d 1129; Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024, 1029. Insurance policies should be interpreted to effect, not deny, coverage. Yount v. Maisano, 627 So.2d 148, 151 (La. 1993). An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. Smith v. Reliance Insurance Co. of Illinois, 01-888 (La.App. 5 Cir. 1/15/02), 807 So.2d 1010, 1014.
With these principles of law in mind, we consider whether the trial court correctly found that neither of the insurance policies issued by Coregis to St. Charles Parish provides coverage as a matter of law for the damages asserted by the plaintiffs in these consolidated cases.
As stated above, the two insurance policies issued to St. Charles Parish were a Commercial General Liability ("CGL") policy and a Public Officials and Employees Liability ("POD") policy. The CGL policy provides coverage within the policy period for "personal injury" and "property damages" caused by an "occurrence," which unexpectedly or unintentionally causes damage. Therefore, intentional acts are generally not covered. However, the CGL policy also contains a discrimination endorsement which states:
Under Section II: Definitions, Personal Injury, is amended to include Discrimination or Violation of the Federal Civil Rights Act of 1871, or 42 U.S.C.1983, and similar laws. (Emphasis added.)
The POD policy specifically excludes coverage for claims arising from the intentional violation of a statute, ordinance, rule, or law. This policy does not contain the discrimination endorsement that is in the CGL policy.
In Bayou Fleet v. Alexander, 97-2205 (E.D.La.9/11/98), 1998 WL 623909, which is the federal litigation primarily between these same parties, the federal district court for the Eastern District of Louisiana considered the same insurance policies at issue in the present case. In the federal litigation, the allegations were very similar to those asserted in this case, but the roles of the parties were reversed. In that case, Bayou Fleet was the plaintiff and it sued the Clulees, some of the Parish Defendants, and others, alleging that Alexander, who was a member of the St. Charles Parish Council, conspired with the Council and others to destroy Bayou Fleet's business, in violation of 42 U.S.C. § 1983, the Sherman Act, and the Louisiana Unfair Trade Practices Act. Coregis moved for *883 summary judgment contending that the claims asserted by Bayou Fleet against the Parish Defendants were not covered by either of the two insurance policies issued to St. Charles Parish, which are the same policies at issue in the present litigation. The federal district court issued a judgment finding that all of Bayou Fleet's causes of action, except the alleged civil rights violations under 42 U.S.C. § 1983, arose from intentional conduct, for which coverage is excluded under both policies. The court found that Bayou Fleet's claims under 42 U.S.C. § 1983, albeit intentional and not within the policy definition of "occurrence," were covered under the endorsement to the CGL policy.
In the instant case, the Clulee Plaintiffs agree that the CGL policy generally does not provide coverage for intentional torts. However, they argue that the state constitutional law claims set forth in the first lawsuit are covered under the CGL policy, because the discrimination endorsement provides coverage for "Discrimination or Violation of the Federal Civil Rights Act of 1871, or 42 U.S.C. § 1983, and similar laws," and the Clulee Plaintiffs' state constitutional law claims are "similar" to federal constitutional law claims under 42 U.S.C. § 1983.[4]
In response to the plaintiffs' appeal and in their Motion for Summary Judgment, Coregis argues that all of the Clulee Plaintiffs' claims against the Parish Defendants are allegations of intentional wrongful acts for which there is no coverage under either insurance policy. They note that the only claims for which there was coverage in the federal litigation were allegations of civil rights violations under 42 U.S.C. § 1983, and there are no federal civil rights violations alleged in this lawsuit. They contend that the discrimination endorsement applies only to federal law violations and, therefore, there is no coverage for the state constitutional law violations asserted in this case.
A thorough review of the Petition for Damages and Amended Petition filed in the first lawsuit reveals that the allegations set forth by the plaintiffs consist of claims of intentional wrongful acts. The POD policy contains exclusions which clearly and unambiguously exclude coverage for intentional acts. Therefore, the POD policy does not provide coverage for the Clulee Plaintiffs' claims in the first lawsuit. Intentional acts are also excluded under the CGL policy, but there is an exception for violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and similar laws. The issue before us with regard to the first lawsuit is whether the claims for violations of state constitutional law are claims under "similar laws" to 42 U.S.C. § 1983 and thus, covered under the CGL policy.
The language in the discrimination endorsement does not specify whether "similar laws" to 42 U.S.C. § 1983 are limited under the policy to federal laws or whether similar state constitutional laws are covered. The state constitutional protections at issue are indeed similar to the federal laws granting these same rights, and the "similar laws" language in the discrimination endorsement could reasonably be interpreted as including coverage for state constitutional law violations. As stated above, if the insurance policy is susceptible to two or more interpretations, then it is ambiguous and must be liberally interpreted in favor of coverage. Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc., supra at 26. This language in the discrimination endorsement is *884 unclear and ambiguous as to what violations are covered under the policy. Therefore, it must be construed in favor of coverage.
Accordingly, we find as a matter of law that the CGL policy issued to St. Charles Parish by Coregis provides coverage for the alleged state constitutional law violations asserted by the plaintiffs in the first lawsuit, and we reverse the summary judgment rendered in favor of Coregis insofar as it found that Coregis's CGL policy did not provide coverage for these claims. We affirm the trial court's decision to grant summary judgment in favor of Coregis with regard to the finding that the POD policy provides no coverage for the claims set forth in the first lawsuit.
With regard to the second lawsuit, we consider the issue of whether either of the two Coregis insurance policies provides coverage for the allegations set forth in the Petition for Mandamus and the Amended Petition. The Clulee Plaintiffs argue that the claims in this lawsuit do not specifically characterize the failure of the parish officials to enforce the zoning laws as negligent or intentional. Therefore, they assert that, because the plaintiffs' claims are not limited to intentional acts and negligence could be found under these allegations, both the CGL and POD policies provide coverage for the claims in the second lawsuit. The Parish Defendants respond that the plaintiffs set forth intentional, not negligent, allegations in this lawsuit, but even if negligence had been alleged, there is no cause of action against the Parish Defendants for "negligent zoning."
In the first lawsuit, the crux of the plaintiffs' argument is that the Parish Defendants intentionally engaged in selective enforcement of the zoning laws in order to assist Bayou Fleet in its sandpit operation. However, in the second lawsuit, the claims set forth by the plaintiffs in the original Petition for Mandamus and Amended Petition are not limited to intentional acts. The original Petition for Mandamus includes allegations that "none of the official defendants conducted any investigation to determine whether there was a zoning violation" by Bayou Fleet. It also states that "....relying on the Lewis letter and without independent investigation as required by law, the Department of Planning and Zoning issued a permit which authorizes Ronald Adams Contractors, Inc. to conduct a sand pit operation on the Bayou Fleet, Inc. property and which further classifies the property as B-2 rather than B-1, effectively working a zoning change of said property without the public hearing required by law." In the First Supplemental and Amended Petition, the Clulee Plaintiffs have asserted, among other things, "[p]etitioners have reported the non-conforming sand pit use to parish officials informally and through filing the original petition in this matter, but parish officials have refused to abate the non-conforming use and have, instead, tacitly or specifically permitted such use." (Emphasis added.) While these claims allege improper acts by the Parish Defendants, they do not suggest that the Clulee Plaintiffs have limited their claims to intentional acts. Rather, the facts set forth in both the Petition for Mandamus and the Amended Petition, if proven, could support a negligence action. Both the CGL and POD policies cover negligent acts by the Parish Defendants. Accordingly, insofar as any negligence by the Parish Defendants is found at trial, we conclude that the CGL and POD policies provide coverage. Accordingly, the trial judge erred when he granted summary judgment in favor of Coregis with regard to any negligence claims in the second lawsuit.
*885 Furthermore, the first and second lawsuits set forth similar facts and related claims. In the second lawsuit, our review of the facts and claims asserted in the First Supplemental and Amended Petition reveals that the state constitutional claims set forth in the first lawsuit could be at issue in this lawsuit as well. Previously in this opinion, we found that state constitutional violations are covered under the CGL policy. Since there are issues of material fact as to whether state constitutional claims are at issue in the second lawsuit and thus, covered under the CGL policy, summary judgment is not appropriate. Accordingly, because Coregis is not entitled to summary judgment with regard to any state constitutional law claims in the second lawsuit, we reverse the trial court's ruling to the extent that it found no coverage under the CGL policy for any state constitutional claims in the second lawsuit.
Considering the claims set forth in the second lawsuit, along with the language of the CGL and POD policies, we conclude that both policies provide coverage insofar as any negligence by the Parish Defendants is found, and the CGL policy provides coverage insofar as any state constitutional violations are found in the second lawsuit.

DECREE
For the reasons set forth above, the summary judgment rendered by the trial court in favor of Coregis Insurance Company is affirmed in part and reversed in part. We reverse and vacate the summary judgment as to any state constitutional claims in the first and second lawsuits, because we have found that there is coverage under Coregis' CGL policy issued to St. Charles Parish for the alleged violations of state constitutional laws. We further reverse and vacate the summary judgment rendered in favor of Coregis insofar as any negligence by the Parish Defendants is found in the second lawsuit. In all other respects, the summary judgment granted in favor of Coregis is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Policy No. 651-006406-8
[2] Policy No. POD-000123-1
[3] The insured, St. Charles Parish, has not joined in the appeal or filed any documents with this Court.
[4] 42 U.S.C. § 1983 grants an individual the right to sue government officials who deprive a person of his rights under the U.S. Constitution.