905 So.2d 343 (2005)
Carla HIRST, Individually and on Behalf of Her Minor Child and Son of the Decedent, Shawn Collier, Shawn J. Collier
v.
Alexander J. THIENEMAN, Jr., Viking Construction Corp., Cobblestone Development Corp., John C. Bose, Labarre Center, Entergy New Orleans, Inc., Entergy Louisiana, Inc., Ronald A. Mentel and Northside Electric, Inc.
No. 2004-CA-0750, 2004-CA-1482.
Court of Appeal of Louisiana, Fourth Circuit.
May 18, 2005.
*345 A.J. Rebennack, Jr., Metairie, Counsel for Plaintiff/Appellant.
John I. Hulse, IV, Hulse & Wanek, A PLC, New Orleans, Counsel for Defendant/Appellee, Viking Construction Corporation.
Edward F. Stauss, III, Keogh, Cox & Wilson, Ltd., Baton Rouge, Counsel for Defendant/Appellee, Valley Forge Insurance Company.
Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge JAMES F. MCKAY, III, Judge TERRI F. LOVE, Judge DAVID S. GORBATY.
GORBATY, J.
Plaintiffs, Carla Hirst, on behalf of the minor child, Shawn J. Collier, and the estate of Shawn Collier, seek review of a summary judgment granted by the trial court in favor of Viking Construction, Inc., and Valley Forge Insurance Company.[1] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY:
Cobblestone Development Corporation ("Cobblestone") contracted with Viking Construction, Inc. ("Viking"), a licensed general contractor, to build a shopping center on property owned by Cobblestone. The shopping center was to be known as the Labarre Center. Viking in turn contracted with Crown Roofing Services, Inc. ("Crown Roofing") to install a roof on the center, and to furnish all labor, materials, equipment, machinery, and supervision necessary for completion of the job.
On November 1, 2000, several employees of Crown Roofing, including Shawn Collier, were unloading rolls of asphalt paper from a flatbed truck onto the ground. The unloading process involved the use of a truck-mounted crane being operated by Byron Hudson, a Crown Roofing employee certified to operate the crane, and Collier, who guided the crane cable and its load of paper to the ground. During this operation, the cable that Collier was guiding came in contact with a high voltage overhead power line maintained by Entergy Corporation (hereinafter "Entergy"), resulting in the electrocution and death of Collier.
As a result of the accident, Carla Hirst ("Hirst"), Collier's fiancée, brought a claim individually and on behalf of the minor child, Shawn J. Collier, alleging that the negligence of all named defendants was the sole and proximate cause of Collier's accident. Named as defendants were Alexander J. Thieneman, Jr. ("Thieneman"), an architect, president of Viking, and an employee of Cobblestone; Viking, the general contractor; Cobblestone, owner of the property on which the Labarre Center was being constructed; the Labarre Center; John C. Bose, consulting engineer for the project; Entergy New Orleans, Inc., and Entergy Louisiana, the companies which maintained the power line; Ronald A. Mentel, Sr.; and Northwide Electric, the electrical subcontractor for the project.
Defendants, Thieneman, Viking, and Cobblestone, among other defendants, filed exceptions of no cause of action asserting that Hirst, individually, lacked capacity as Collier's fiancée to pursue a wrongful death claim or survival action on behalf of Collier. The trial court granted *346 the exception dismissing Hirst's claims in her individual capacity, and maintained the claims of the minor child, Shawn J. Collier.
The original petition was supplemented and amended to add as defendants CNA Insurance Companies, Valley Forge Insurance Company (Valley Forge), and Transcontinental Insurance Company, liability insurance carriers for the project.
Viking, Cobblestone and Thieneman all filed motions for summary judgment. Prior to a hearing on the motions, plaintiffs supplemented and amended their petition asserting additional acts of negligence on the part of Viking, Cobblestone and Thieneman because of Viking and Thieneman's failure to properly qualify for a contractor's license. Plaintiffs again amended the petition to assert intentional acts on the part of Viking, Cobblestone and Thieneman should they be found to be the statutory employers of Collier.
Following a hearing, the trial court granted summary judgment in favor of John C. Bose; Thieneman, as the architect; and Cobblestone, finding no liability on their part. However, because Viking's motion was based upon the statutory employer doctrine[2], the trial court denied Viking's motion in light of plaintiffs' allegations that Collier's injuries and death were the result of Viking's intentional acts.
Plaintiffs filed a fourth supplemental and amending petition naming Crown, and its employees, Ray Palmer, Charles Champlin, Byron Hudson, Tony Mauchard, Kerry Thomas and Jonathan Witman, as defendants. Crown filed exceptions of no cause of action and res judicata asserting that the claims were limited under the workers' compensation laws, and that the claims had been already adjudicated in the workers' compensation claim. The trial court denied both exceptions.[3]
After numerous hearings on various motions for summary judgment, the only remaining defendants were Valley Forge, Viking, and Crown and its employees.[4] Valley Forge Insurance Company filed a motion for summary judgment on the ground that no genuine issues of material fact existed regarding coverage afforded under the commercial general liability policy issued to Viking for the claims asserted by Collier. Viking also filed a motion for summary judgment on the ground that no genuine issue of material facts existed with regard to its commission of intentional acts. Thus, because it was Collier's statutory employer, his only remedy was pursuant to the workers' compensation *347 laws. Following hearings, the trial court granted both summary judgments dismissing all of plaintiffs' claims with respect to allegations of vicarious liability and intentional acts. It is from these judgments that plaintiffs appeal.

DISCUSSION:
Appellate courts review summary judgments de novo. Spellman v. Bizal, 99-0723 (La.App. 4 Cir. 3/1/00), 755 So.2d 1013. The appellate court should affirm a summary judgment only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966 B.

A. Summary Judgment in favor of Viking:
In its motion, Viking argued that there were no genuine issues of material fact with respect to whether Viking committed intentional acts that resulted in the decedent's electrocution and death. Plaintiffs argued that Viking was liable in tort for Collier's injuries because it committed intentional acts, and, further, was vicariously liable as a statutory employer for the actions of Crown Roofing. The specific acts alleged by plaintiffs were that Crown Roofing employees placed or allowed the crane to be placed near a power line, and continued working in the area without requesting that the electricity be shut off. Plaintiffs argue that the actions of Crown Roofing and Viking as the statutory employer qualify as intentional acts under the law, which, if proven, make them responsible pursuant to the theory of respondeat superior and this Court's ruling in Rayford v. Angelo Iafrate Construction, 01-1095 (La.App. 4 Cir. 1/9/02), 806 So.2d 898.
Following a de novo review of the record, this Court is of the opinion that there exist no genuine issues of material fact with regard to the roles of Viking Construction and Crown Roofing in causing the death of Shawn Collier.
First, this Court's decision in Rayford, supra, is totally inapplicable to the facts of this case. Rayford dealt with a peremptory exception of no cause of action. The defendant/employer, Iafrate Construction, excepted to the petition arguing that plaintiff was precluded from asserting a cause of action in tort against his employer under the exclusivity provision of the Workers' Compensation Act. Id. at 01-1095, p. 2, 806 So.2d 899. This Court reversed, holding that the exception of no cause of action could not be maintained because plaintiff alleged that Iafrate had committed intentional torts in his petition, and all well-pleaded factual allegations must be accepted as true. Accordingly, the Court held that plaintiff's petition stated a cause of action. The Court did not hold that merely making allegations of intentional tort created genuine issues of material fact sufficient to defeat summary judgment.
Second, this Court recently reiterated the prevailing jurisprudence as it concerns the intentional act exception to the exclusive remedies provision of the workers' compensation act. In Escande v. Alliance Francaise De La Nouvelle Orleans, XXXX-XXXX (La.App. 4 Cir. 1/19/05), 894 So.2d 488, this Court stated:
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court held that the exclusive remedy rule did not apply to intentional torts or offenses. "The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did." Id. at 481.

*348 In regards to the definition of "intent" for the purpose of determining when an intentional tort has been committed, the Louisiana Supreme Court explained the following in Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, 211: the meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct or (2) knows that the result is substantially certain to allow from his conduct, whatever his desire may be as to that result." Id. (quoting Bazley). To meet this standard of "substantially certain," our jurisprudence requires more than a reasonable probability that an injury will occur; this term has been interpreted as being the equivalent to "inevitable," "virtually sure," and "incapable of failing." Clark v. Division Seven, Inc., 99-3079 (La.App. 4 Cir. 12/20/00), 776 So.2d 1262, 1264; Brown v. Diversified Hospitality Group, 600 So.2d 902, 906 (La.App. 4 Cir. 5/28/92).
In Reeves, the court observed that, since Bazley, the intentional act exception has been narrowly construed and that even gross negligence has been found to not meet the intentional act requirement. With regard to the question of whether an actor knows that the result was substantially certain to follow, the supreme court explained: "[B]elieving that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." Reeves at 211.
Id. at p. 4, 894 So.2d at 490-91..
The plaintiffs aver that because Crown Roofing's supervisor (a statutory employee of Viking) was present on the job site when the crane and cable were being used in close proximity to a power line, but did nothing to prevent the accident from occurring, a genuine issue of material fact exists as to whether Viking is guilty of an intentional tort. Further, because Viking was the general contractor it was in a position to control the actions of the subcontractor (Crown Roofing), and to force Crown Roofing's compliance with OSHA regulations.
Louisiana jurisprudence is clear that allegations such as plaintiffs' involving violations of OSHA standards and disregarding a known safety risk while constituting gross negligence do not constitute an intentional act or meet the "substantial certainty" test.[5]
*349 In Reeves, although the supervisor feared that someone would get hurt if a sandblasting pot were moved manually but ordered the plaintiff to move the pot manually in spite of this knowledge, his actions failed to meet the "substantial certainty" test. In this context, the court utilized an example of how the "substantial certainty" element has been explained:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter takes the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only "intended" to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Id., p. 9, 731 So.2d at 212-213, citing Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers' Compensation Law & Practice, § 365, p. 208.
While this Court recognizes that summary judgment is rarely appropriate for a determination of subjective facts such as intent, the determination of the question of intent in the instant case is not one of subjective fact. In this case, the question is whether we infer intent as a matter of law based on certain material facts about which there is no genuine dispute. Based on the undisputed facts of this case, we find that, as a matter of law, Viking did not intentionally cause injury to the tragically deceased plaintiff. A trial on the merits could not change either the law or the undisputed facts.
Accordingly, reviewing the record in light of the above, we find that there is simply nothing in the record to support a contention that any actions or inactions on the part of Viking rose to the level of an intentional tort.
Finally, the fact that Viking was the deceased's statutory employer bears no import with regard to whether Viking *350 committed an intentional tort. Vicarious liability simply does not attach.
Plaintiffs argue that there exists a genuine issue of material fact as to whether plaintiff is the statutory employee of Viking. The record reveals that the court below already adjudged Viking to be the statutory employer, a ruling that was not contested by plaintiffs. Nonetheless, Viking's status as statutory employer simply has no bearing on whether it is vicariously liable for alleged intentional torts of Crown Roofing.
In Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981), the Supreme Court construed the legislation relative to intentional tort in an employer/employee relationship as follows:
The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did.
Further, it has been determined that "substantially certain to follow" requires more than a reasonable probability that an injury will occur. Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312. "Certain" has been defined to mean "inevitable" or "incapable of failing." Id. Thus, an employer's mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the "substantial certainty" requirement. Nicks v. AX Reinforcement Co., (La.App. 5 Cir. 2/25/03), 841 So.2d 987, 991, citing Armstead v. Schwegmann Giant Super Markets, Inc., 618 So.2d 1140, 1142 (La.App. 4 Cir.1993).
Based on the above definitions, it simply does not follow that Viking Construction can be directly or vicariously liable for an alleged intentional tort committed by an independent contractor. Even if Viking was aware of how Crown Roofing was conducting its business on the day of this accident (which the trial court determined it was not), no actions on the part of Viking can be construed to be intentional.
Therefore, we affirm the trial court's granting of summary judgment in favor of Viking.

B. Summary Judgment in favor of Valley Forge:
The trial court granted summary judgment in favor of Valley Forge finding that there was no coverage under the policy issued by Valley Forge to Viking. Plaintiffs argue that the definition of "intentional act" contained in the policy issued by Valley Forge is ambiguous; therefore, any ambiguity should be resolved in favor of coverage. Valley Forge counters that the language is clear and unambiguous. The commercial general liability policy provides coverage for sums the insured becomes obligated to pay as damages because of bodily injury or property damage. Valley Forge further argues that the insurance policy expressly excludes coverage for injuries that are expected or intended from the standpoint of the insured, and also excludes coverage for any obligation of the insured under workers' compensation, disability benefits or unemployment compensation laws, or any similar law.
The dispositive issue to be decided is whether the Valley Forge policy provided coverage for damages resulting from any alleged negligence and/or intentional acts of Viking.
The determination of whether a contract is clear or ambiguous is a question of law. Mayo v. State Farm Mutual Automobile Insurance Company, 03-1801 (La.2/25/04), 869 So.2d 96. As it pertains to legal issues, "the appellate court gives no special weight to the finding of the trial *351 court, but exercises its constitutional duty to review questions of law and render a judgment on the record." Cacamo v. Liberty Mutual Fire Ins. Co., 04-0074, 04-0075, 04-0076, 04-0077, 04-0078, p. 10 (La. App. 4 Cir. 9/29/04), 885 So.2d 1248, 1255. "An insurance policy is a contract between the parties and should be construed by using the general rules of contract interpretation set forth in the Louisiana Civil Code." Clulee v. Bayou Fleet, Inc., 04-106, 04-107 (La.App. 5 Cir. 5/26/04), 875 So.2d 878, 881, citing Mayo, supra.
In the instant case, the Valley Forge policy specifically excludes coverage for bodily injury or property damage expected or intended from the standpoint of the insured.[6] Commonly referred to as an "intentional act exclusion," the exclusion's purpose is to deny liability insurance coverage to an insured in circumstances where the insured acts deliberately and intends or expects bodily injury to another. Doe v. Smith, 573 So.2d 238, 241 (La.App. 1 Cir.1990). It is "designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Breland v. Schilling, 550 So.2d 609, 610 (La.1989).
In Bazley v. Tortorich, 397 So.2d 475, 481-82 (La.1981), the Louisiana Supreme Court defined both the words "intentional" and "act" as used in tort law. The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has references to the consequences of an act rather than to the act itself. [citations omitted.]
In Breland, supra, the Supreme Court held that the language of the policy exclusion of coverage for bodily injury which was either expected or intended from the standpoint of the insured was ambiguous, and, accordingly, adopted the interpretation that only those injuries that were themselves intended by the insured would be excluded. The Court further held that the applicability of the exclusion is to be determined from the subjective intent of the insured, as well as "the reasonable layman's expectations concerning the scope of his liability insurance coverage." 550 So.2d at 613.
It is clear from reading the policy issued by Valley Forge that intentional acts committed from the standpoint of Viking are excluded. Accordingly, we find that trial court did not err in granting summary judgment in favor of Valley Forge because no coverage existed under the policy for intentional acts.
Plaintiffs also argue that Viking's negligence was a cause of Collier's injuries and death. However, the Valley Forge policy specifically excludes coverage for obligations arising within the ambit of workers' compensation laws.[7]
*352 Louisiana law unambiguously states that workers' compensation is the exclusive remedy available to an employee for negligence claims against employers, including statutory employers. After thoroughly reviewing the record, we agree with the trial court that, as a matter of law, Valley Forge was entitled to summary judgment.
Accordingly, for the reasons stated herein, we affirm the trial court's judgments in their entirety.
AFFIRMED.
LOVE, J., Dissents in Part; Concurs in Part and Assigns Reasons.
JONES, J., Dissents in Part; Concurs in Part; for the Reasons Assigned by J. LOVE.
LOVE, J., Dissenting in Part; Concurring in Part.
I respectfully dissent from the majority's opinion and would reverse the trial court's judgment granting defendant, Viking Construction's, Motion for Summary Judgment. However, I concur with the majority insofar as the majority opinion affirms the trial court's judgment granting Valley Forge Insurance Company's Motion for Summary Judgment.
Vicarious liability will only attach in cases where the employee is acting in the ambit of his assigned duties, and also in furtherance of his employee's objective. Duplantis v. Dillard's Dept. Store, 02-0852 (La.App. 1 Cir. 5/9/03), 849 So.2d 675, 679. The principal test for vicarious liability of an employer for acts of an employee is the degree of control over the work reserved by the employer. It is not the supervision and control that is actually exercised which is most significant; rather the question is whether from the nature of the relationship, the right to do so exists. Mack v. CDI Contractors, Inc., 99-1014 (La.App. 5 Cir. 2/29/00), 757 So.2d 93. However, each case of vicarious liability must be decided on its own merit. Id.
Although Louisiana courts have held that the concept embodied in Louisiana Civil Code art 2320 does not apply when an independent contractor relationship exists, the courts have also held that "[t]he purpose of [La. R.S. 23] section 1061 is to prevent employers from evading their compensation responsibility by interposing an independent contractor or subcontractor between themselves and their employees." Wilson v. Werner Company Inc., 393 So.2d 779, 781 (La.App. 2nd Cir.1/13/81).
It is uncontroverted that Mr. Collier was acting in the ambit of his assigned duties and in furtherance of his employer's objective to construct a roof on the Labarre Center. As such, a genuine issue of material fact exists as to whether Mr. Collier, as the employee of Crown Roofing, was the statutory employee of Viking Construction and in the course and scope of employment at the time of the accident. Viking Construction avers that it is not responsible for the actions of Crown Roofing's foreman, Mr. Chaplin, or its superintendent, R.D. Chatman, both of whom were on the site the day of the accident. However, the relationship between Crown Roofing and Viking Construction is an issue of material fact, upon resolution of which will determine whether Mr. Chaplin, foreman on the project, was also a statutory employee of Viking Construction. Plaintiff avers that Mr. Chaplin, as Viking *353 Construction's statutory employee, was present at the work site when the crane and cable were within five (5) feet of the power line, saw the crane and cable next to the power line and did nothing to prevent the accident from occurring.
After de novo review of the record, I find that the trial court erred in granting defendant, Viking Construction's, Motion for Summary Judgment. I find that genuine issues of material fact exist as to whether the direct and statutory employers' conduct rose to the level of an intentional act so as to sustain the tort action brought by Ms. Hirst on behalf of the minor child, Shawn Collier, within the intentional tort exception to the Workers' Compensation Act's exclusivity provision. Summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Quinn v. RISO Investments, Inc., XXXX-XXXX (La.App. 4 Cir. 3/3/04), 869 So.2d 922.
In accordance with this Court's findings in Rayford, 806 So.2d 898, genuine issues of material fact exist as to whether inferences can be made that, to have subjected its employee to such a hazard and potential electrocution, Viking Construction's actions or inactions reached a level of an intentional act, "i.e., that physical injuries were substantially certain to occur from proceeding with the construction work at that time." Id. Accordingly, I find that the trial court erred in granting Viking Construction's Motion for Summary Judgment and would, therefore, reverse the trial court's finding.
Insofar as the majority's opinion affirms the judgment of the trial court granting Valley Forge's Motion for Summary Judgment, I concur.
NOTES
[1] Plaintiffs filed two separate appeals. The appeal of the Viking summary judgment was lodged as 2004-CA-0750, and the appeal of Valley Forge's summary judgment was lodged as 2004-CA-1482. Although the appeals have not been consolidated, the panel has chosen to address all issues in one opinion.
[2] Viking alleged that Collier was the statutory employee of Viking and Cobblestone under the two contract theory. Therefore, the exclusive remedy against Viking and Cobblestone was limited to worker's compensation benefits pursuant to La. R.S. 23:1061 and 23:1032.
[3] Crown subsequently filed a motion for summary judgment again asserting the exclusivity provision of the worker's compensation laws. The trial court denied the motion. This Court granted Crown's writ application, and reversed the trial court. Hirst v. Thieneman, XXXX-XXXX (La.App. 4 Cir. 4/7/05), 901 So.2d 578.
[4] John C. Bose and Northside Electric were dismissed because they had no involvement with the construction project as of the date of the accident. Entergy was dismissed plaintiff could not sustain his burden of proving the electric wire in question was hazardous, in the wrong location, or that Entergy had received any notice to shut off the current. Thieneman, the architect, was dismissed because his only role was to furnish plans for the project. He had no on-going involvement in the construction. Cobblestone was dismissed because, as owner of the property, it had no responsibility for the construction project.
[5] In Reeves v. Structural Preservation Systems, 98-1795 (La.3/12/99), 731 So.2d 208, the court recounted Louisiana's appellate decisions where employer's were not held liable under the intentional act exception for violations of safety standards or failing to provide safety equipment as follows:

Jasmin v. HNV Central Riverfront Corp., 94-1497 (La.App. 4 Cir.8/30/94), 642 So.2d 311, writ denied, 94-2445 (La. 12/9/94), 647 So.2d 1110 (failure to provide safe working environment in grain storage bin); Leger v. Hardy Rice Drier, Inc., 93-1512 (La.App. 3 Cir. 6/1/94), 640 So.2d 650 (maintaining forklift in unsafe condition); Williams v. Gervais F. Favrot Co., Inc., 573 So.2d 533 (La.App. 4 Cir.), writ denied, 576 So.2d 49 (La.1991) (violations of OSHA and other accepted industry safety standards); Dycus v. Martin Marietta Corp., 568 So.2d 592 (La.App. 4 Cir.), writ denied, 571 So.2d 649 (La. 1990) (allowing worker to operate dangerous equipment); Holliday v. B.E. & K. Const. Co., 563 So.2d 1333 (La.App. 3 Cir. 1990) (knowledge that machine is dangerous and that its use creates a high probability that someone will eventually be injured from such use); Davis v. Southern Louisiana Insulations, 539 So.2d 922 (La.App. 4 Cir.1989) (failure to provide ladders and scaffolding); Hood v. South Louisiana Medical Center, 517 So.2d 469 (La.App. 1 Cir.1987) (failure to maintain safe working conditions); Taylor v. Metropolitan Erection Co., 496 So.2d 1184 (La.App. 5 Cir.), writ denied, 497 So.2d 1388 (La.1986) (failure to provide scaffold worker with safety belt); Snow v. Gulf States Utilities Co., 492 So.2d 31 (La.App. 1 Cir.), writs denied, 496 So.2d 349, 356 (La.1986) (allowing worker to work too closely to energized wires); Jacobsen v. Southeast Distributors, Inc., 413 So.2d 995 (La.App. 4 Cir.), writ denied, 415 So.2d 953 (La. 1982) (failure to provide specifically requested safety equipment); Cortez v. Hooker Chemical and Plastics Corp., 402 So.2d 249 (La.App. 4 Cir.1981) (deficiently designed machinery and disregard of OSHA standards); Erwin v. Excello Corp., 387 So.2d 1288 (La.App. 1 Cir.1980), writs refused, 396 So.2d 1242 and 397 So.2d 1363 (La. 1981) with Trahan v. Trans-Louisiana Gas Co., 618 So.2d 30 (La.App. 3 Cir.1993) (employer committed intentional act by repeatedly exposing employee to the chemical mercaptan where employee had become ill on two prior occasions after exposure to mercaptan); Wainwright v. Moreno's, Inc., 602 So.2d 734 (La.App. 3 Cir.1992) (employer committed intentional act by ordering employee to work in a ditch that had caved in the previous day and which looked as though it would cave in again). Likewise, gross negligence does not meet the intentional act requirement. Gallant v. Transcontinental Drilling Co., 471 So.2d 858 (La.App. 2 Cir.1985).
Id., pp. 7-8, 731 So.2d at 211-212.
[6] COMMERCIAL GENERAL LIABILITY FORM

SECTION 1  COVERAGES
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
2. Exclusions
This insurance does not apply to:
a. Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
[7] COMMERCIAL GENERAL LIABILITY FORM

SECTION 1 COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
2. Exclusions
This insurance does not apply to:
* * *
d. Workers Compensation and Similar Laws
Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.