EDWIN A. LOMBARD, Judge.
hThe Appellant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross/Blue Shield of Louisiana (“Blue Cross”), seeks review of an April 23, 2014 judgment finding that it violated the Louisiana Genetic Information Non-Discrimination Act, La.Rev.Stat. 22:1023 (“the Act”) and awarding $50,000 in damages, plus attorneys’ fees and costs to Appellee, Jane Doe. We affirm the judgment of the district court finding that no legal errors were committed nor was the judgment manifestly erroneous.
Facts
From childhood through early adulthood, Ms. Doe was covered as a dependent by her father’s Blue Cross insurance policy. When Ms. Doe was eight years old, a treating physician noted that she had some physical characteristics of Marfan syndrome, which is a genetic disorder of the connective tissue.[1] Claims for her treatment were submitted by her healthcare provider to Blue Cross with the International Statistical Classification of Disease (“ICD”)-9 code of 759.82, which is the diagnostic code for Marfan syndrome.
12From 1993 through the late 1990s, claims were made by various treating physicians of Ms. Doe that were identically coded for Marfan syndrome. Other than these initial claims, no other medical information itself was submitted to Blue Cross related to Marfan syndrome. Blue Cross maintains that the only information in its database pertaining to Ms. Doe’s diagnosis of Marfan syndrome is ICD-9 code 759.82.[2] Regarding the claim submissions, the parties stipulated that:
*134 [n]owhere in the claim submission is there any indication of how a physician arrived at the ICD-9 code, i.e., whether the patient [Ms. Doe] told them, whether the physician made the determination from his/her examination, or whether the physician did some ■ specific testing and what kind of tests were performed.
In November of 1994, Ms. Doe was tested for Marfan syndrome, but the test results were inconclusive.[3] Although she was monitored for the development of further Marfan syndrome characteristics throughout her adolescence, Ms. Doe never received treatment for and was never diagnosed with Marfan syndrome. The parties stipulated that Ms. Doe never developed Marfan syndrome despite having some inherited physical characteristics suggestive of the syndrome.[4]
When she was approximately 23 years old, Ms. Doe applied for individual insurance coverage with Blue Cross. The application or medical questionnaire completed by Ms. Doe did not list any medical problems, issues, or history. [.¡Additionally, the questionnaire did not have any questions relating to genetic information. During the process of reviewing Ms. Doe’s application, Blue Cross’ underwriting department reviewed her prior claims history and medical condition while she was insured under her father’s policy. Eventually, it denied her health coverage application because her claims history revealed numerous Mar-fan syndrome codes.
Procedural History
Ms. Doe filed suit against Blue Cross alleging violations of and seeking damages under the Act. Trial was held in February 2014. In a judgment dated April 23, 2014, the district court ruled in favor of Ms. Doe, finding Blue Cross liable for negligent disclosure of her genetic information, and awarded her statutory damages in the amount of $50,000 with judicial interest, -costs and reasonable attorney fees.
Blue Cross timely field the instant appeal and raises two (2) assignments of error on appeal:
1) The, district court committed a legal error in its reading and application of La. Rev. Stat 22:1023, in finding that a diagnostic code constituted “Genetic •Information,” as defined in that statute.
2) The district court committed legal error in its analysis and application of La. Rev. Stat 22:1023, in finding that Blue Cross’ reference to a diagnostic code constituted negligent “Disclosure” of Ms. Doe’s “Genetic Information.”
Ms. Doe filed an answer to the appeal arguing that she is entitled to statutory damages of $100,000 because the disclosure committed by Blue Cross was willful. 14Standard of Review
Appellate jurisdiction of courts of appeal extends to both law and facts. Arias v. Stolthaven New Orleans, L.L.C., 08-1111, p. 5 (La.5/5/09), 9 So.3d 815, 818 *135 (citing La. Const, art. V, § 10(B)). As the Supreme Court has further explained:
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that was manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transp. and Development, 617 So.2d 880, 882, n. 2, (La.1993). When the court of appeal finds that a reversible legal error or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Id. Thus, we review the instant appeal for both errors of law and factual findings that are manifestly erroneous or clearly wrong.
Genetic Information
In its first assignment of error, Blue Cross argues that the district court committed a legal error in its reading and application of the Act. Specifically, it argues that the district court erred in finding that a diagnostic code constitutes “genetic information,” as defined in the Act. Blue Cross argues that its underwriting department’s determination regarding Ms. Doe’s eligibility for coverage was not based on “genetic information” as it is statutorily defined. Instead, her eligibility was determined based on the diagnostic codes that were submitted by Ms. Doe’s former treating physicians.
Relying on the definitions of “genetic information” and “genetic test” within the Act, Blue Cross distinguishes between the two terms. Genetic information is defined, in pertinent part, as information about genes, gene products, inherited | .^characteristics, or family history/pedigree that is expressed in common language and shall include each of the following: 1) an individual’s genetic test; 2) the genetic tests of the family members of an individual; and 3) the manifestation of a disease or disorder. La.Rev.Stat. 22:1023(A)(8)(a).
A “genetic test” is defined within the statute as:
any test for determining the presence or absence of genetic characteristics in an individual, including tests of nucleic acids, such as DNA, RNA, and mitochondrial DNA, chromosomes, or proteins in order to diagnose or identify a genetic characteristic or that detects genotypes, mutation, or chromosomal changes. La.Rev.Stat. 22:1023(A)(9)(a)
Blue Cross acknowledges that no insurer can deny coverage to any individual on the basis of any genetic information. La. Rev.Stat. 22:1023 B(l)(c). It argues, however, that a diagnosis is not considered “genetic information” under the definition contained in the Act. Blue Cross further contends that “genetic information” does not encompass genetic disorders, genetic diseases, or diagnostic codes. Blue Cross additionally contends that “genetic information” does not include information from an individual who has been diagnosed with a disease or disorder, regardless of whether the diagnosis was based on genetic testing. It avers that Ms. Doe was “diagnosed” because of her skeletal characteristics and aortic dilation, which it avers had nothing to do with “genetic information”. Blue Cross maintains that it has no knowledge of any genetic test that Ms. Doe may have taken.[5] Blue Cross contends that:
1) It never possessed, reviewed, or even knew of any genetic test performed on Ms. Doe;
lfi2) It neither possessed, reviewed, nor was aware of any genetic testing of Ms. Doe’s family members; and
*136 3) It had no information about any manifestation of Marfan syndrome in any of Ms. Doe’s family members.
There is little jurisprudence applying the Act. However, we shall interpret the statute according to the plain meaning of its wording. In Credit v. Richland Parish Sch. Bd., 11-1003 (La.3/13/12), 85 So.3d 669, the Supreme Court explained that the appropriate starting point in the interpretation of any statute is the language of the statute itself:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:4. The meaning and intent of a law is to be ascertained by a consideration of the entire law as well as all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature enacting the law. City of DeQuincy v. Henry, 10-0070, p. 3 (La.3/15/11), 62 So.3d 43, 45 (citing SWAT 24 Shreveport Bossier Inc., 00-1695, p. 11 (La.6/29/01), 808 So.2d 294, 302; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1129).
Id., p. 7, 85 So.3d at 675.
As previously stated, the definition of “genetic information” includes “information about ... inherited characteristics” as well as “the manifestation of a disease or disorder.” La.Rev.Stat. 22:1023(A)(8)(a). As a child, Ms. Doe was monitored for symptoms of Marfan syndrome because of her skeletal characteristics and aortic dilation. These constitute “inherited characteristics” which her treating physicians perceived as a possible “manifestation of a disease or disorder”. While Blue Cross emphasizes that Ms. Doe was not tested for Marfan syndrome, it is evident from her health care history that her treating physicians [7coded their claims for her treatment as if she had actually been diagnosed with the syndrome. This coding was based on her inherited characteristics rather than genetic tests. A diagnostic code linked directly to a genetic disease or disorder, like Marfan syndrome, that is submitted by a health care provider for claims purposes is unequivocally based upon genetic information, even if the only basis is the patient’s physical or inherited characteristics.. If this was not the case, there would be no basis for the coding. The irony here is that Ms. Doe was never actually diagnosed with Marfan syndrome. As the district court explained in its reasons for judgment, “[ijnformation concerning a person’s genetic predisposition for a disease, without any manifestation of the disease itself, is genetic information.” We agree. The district court did not commit a legal error in interpreting the statute at issue; thus, this assignment of error is without merit.
Disclosure of Genetic Information
Blue Cross avers that it never disclosed Ms. Doe’s genetic information. Ms. Doe’s main argument is that Blue Cross’ claims department disclosed her genetic information to Blue Cross’ underwriting department. However, Blue Cross maintains that La.Rev.Stat. 22:1023 indicates that in order for a “disclosure” to occur, there has to be some outward sharing of information. To interpret the wording of the statute and the definition of “disclose” otherwise, it avers, would lead to absurd consequences.
Additionally, Blue Cross argues that the insurance underwriter that used Ms. Doe’s information used it within Blue Cross’ own internal claim system to aid in determining whether to accept her insurance application. This internal claim system, it con *137 tends, is a part of a network from which all Blue Cross departments must work. It asserts that because the claim information at issue stayed within |RBlue Cross, the information was not “disclosed”, pursuant to the statutory definition.
Blue Cross further argues that the Act must be read in its entirety in order to understand the Legislature’s intent and the application of the Act. It contends that the Act’s purpose is to protect DNA information, as evidenced by the Legislature’s focus on DNA, genes, chromosomes and mutations. See La.Rev.Stat. 22:1023 Sections A(1),(4),(5),(8)(a)(i-iii), and (9)(a-b). Blue Cross argues that it never tested Ms. Doe for such information, nor was this information available regarding her.
Blue Cross additionally avers that the statute provides that an insurer shall not be precluded from “establishing rules for eligibility for an individual health insurance coverage based on the manifestation of a disease or disorder in that individual.” La.Rev.Stat. 22:1023 B(6)(b). The Act further provides that an insurer can otherwise alter or restrict coverage based on the manifestation of a disease in the individual applicant. La.Rev.Stat. 22:1023 B(7)(b) & B(8)(b). Blue Cross maintains that its rejection of coverage for Ms. Doe was based upon the above-referenced sections of the Act that allow for an insurer to turn away applicants based upon earlier manifestations of a disease (i.e., Marfan syndrome). Thus, it could not be acting in violation of the Act by rejecting Ms. Doe’s application for coverage. However, Blue Cross’ argument ignores a key fact that was stipulated to by the parties, which is that Ms. Doe “never developed Marfan syndrome, despite having some inherited physical characteristics suggestive of Mar-an syndrome.” Although she was monitored for possible expressions of Marfan syndrome, no real manifestations of Mar-fan syndrome ever materialized.
IflAs stated above, “when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” Credit, 11-1003, p. 7, 85 So.3d at 675. The Act defines a “disclosure” as conveying or providing “access to genetic information to a person other than the individual.”[6] It is evident from the facts of this case that access to Ms. Doe’s genetic information was provided to a “person”, i.e., Blue Cross or specifically its underwriting department, other than herself.[7] The fact that medical providers, who observed and treated Ms. Doe, coded their claims in a manner that directly linked her treatment to Marfan syndrome does not absolve Blue Cross from impermissibly using and accessing this genetic information to crosscheck her insurance application as a potential insured. Blue Cross failed to establish protocols to prevent the disclosure of genetic information as required by the Act.
The wording of the Act is not unclear or ambiguous. The district court interpreted and applied the statute at issue as written. Furthermore, the district court’s factual determination that Ms. Doe’s genetic information was disclosed was not manifestly *138 erroneous. This assignment of error is without merit.
Answer to the Appeal
Ms. Doe filed an answer to the appeal wherein she requests that we find that the disclosure of her genetic information by Blue Cross was willful. Alleging that more than one disclosure was made, she contends that she is due the statutory | ^stipulated sum of $100,000 for at least one willful disclosure, as well as costs and attorneys’ fees.
Ms. Doe avers that the Act was in effect in 1997[8]; however, Blue Cross did not establish any procedures to comply with the Act until after her lawsuit was filed. Blué Cross’ underwriting department, she contends: 1) willfully and intentionally accessed her prior claim history in its database; 2) learned that her treatment history contained diagnostic codes for Marfan syndrome without manifestations; and 3) consequently, denied her insurance application. She maintains that these facts establish that Blue Cross’ disclosure of genetic information was willful and that it improperly used her information to advance its own interest by denying her application to avoid potential costly claims in the future.
She further argues that willful conduct can be inferred, even when there is no direct evidence of willfulness. State v. Main Motors, 383 So.2d 327, 329 (La.1979). Relying upon Hirst v. Thieneman, 04-0750, pp: 7-9 (La.App. 4 Cir. 5/18/05), 905 So.2d 343, 348-349, she further avers that willful intent may also be inferred as a matter of law, based on facts indicating to a substantial certainty that the consequences were desired. While she concedes that it was permissible for Blue Cross to use her genetic information' for claims purposes, she argues that it was prohibited for the underwriting department to intentionally use her genetic information to deny her coverage.
We cannot determine that Blue Cross’ actions were willful in accessing her records in contravention of the Act. Though Ms. Doe contends that willfulness can be inferred based on facts indicating to a substantial certainty that the _|nConsequences were desired, it is not clear from the record that the consequence — the denial of her application — was intended by Blue Cross’ underwriting department when her records were accessed. Under our manifest error standard of review, we cannot say that the district court erred in finding that Blue Cross did not act willfully by accessing Ms. Doe’s records.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED
LANDRIEU, J., concurs with reasons.
LOBRANO, J., dissents with reasons.

. "Marfan syndrome is a genetic connective tissue disorder that affects multiple body systems, including the skeleton, eyes, heart, blood vessels, nervous system, skin, and lungs.” Ann G. Hirschman, Other cardiovascular impairments, Med. Proof of Soc. Sec. Disab.2d§ 5:28 (2014). ■

. Blue Cross avers that the ICD-9 code entered by healthcare providers is either submitted electronically or images of the paper claim are captured in Blue Cross’ claims system. These codes are used to process claims and retain a claim history. Blue Cross contends that a claims history is necessary for *134 application of annual deductible, and actuarial and underwriting functions.

. The test performed was an “immunofluores-cence checking for the fibrillin”; however, no DNA testing has ever been performed on Ms. Doe. Blue Cross contends that it did not discover that a Marfan syndrome-related test was performed on Ms. Doe until this litigation commenced.

. People suffering from Marfan syndrome "are usually tall in stature, with long limbs and fingers.” Dr. Michael Meehan, The Handiwork of Nature: Patentable Subject Matter and Laboratory Corporation v. Metabolite Labs, 16 Alb. L.J. Sci. & Tech. 311, 317 (2006).

. See footnote 3, supra.

. The “individual” as defined by the Act means "the source of the human tissue sample from which a DNA sample is extracted or genetic information is characterized.” La. Rev.Stat. 22:1023(A)(10).

. A "person” is defined by Act as "all persons other than the individual who is the source of a tissue sample and shall include a family, corporation, partnership, association, joint venture, government, governmental subdivision or agency, and any other legal or commercial entity.” La.Rev.Stat. 22:1023(A)(13).

. The earlier version of the Act was numbered La. R.S. 22:213.7.