LIBERTY MUTUAL INSURANCE COMPANY *vs.* STATE TAX COMMISSION.

Suffolk.    April 5, 1974. — June 11, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Insurance,* Payment of premiums in instalments, "Gross premiums." *Taxation,* Insurance company. *Words,* "Gross premiums."

Payments in addition to the regular premiums received by an insurance company from holders of motor vehicle policies who elected the privilege of paying the premiums in instalments were included in the term "gross premiums" in G. L. c. 63, § 22. [411-415]

APPEAL from a decision of the Appellate Tax Board.

*Robert A. Penney (James F. Whipple* with him) for the taxpayer.

*Terence P. O'Malley,* Assistant Attorney General, for the State Tax Commission.

WILKINS, J.    In 1967, 1968, and 1969, Liberty Mutual Insurance Company (Liberty) received payments in addition to its regular filed or approved premium charges from its Massachusetts motor vehicle insurance policyholders who elected to pay premiums for such insurance "in instalments under plans, rates and charges approved by the commissioner [of insurance]." See G. L. c. 175, § 193B, inserted by St. 1937, c. 314. The State Tax Commission

(commission) assessed an excise of two per cent on these extra charges relying on G. L. c. 63, § 22, as amended through St. 1966, c. 698, § 45, which provides that (with exceptions not relevant here) a domestic insurance company such as Liberty must "annually pay an excise of two per cent upon the *gross premiums* for all policies written or renewed" (emphasis supplied). The Appellate Tax Board, dealing with the matter largely on a stipulation of facts, upheld the position of the commission. Liberty has appealed. The sole issue for our determination is whether amounts paid to Liberty for the privilege of paying motor vehicle insurance premiums in instalments are included in the term "gross premiums" in G. L. c. 63, § 22.

Although the premium payment instalment plan in effect in 1969 differed somewhat from the plan in effect in 1967 and 1968, the basic provisions were much the same. The amount due was to be paid in equal instalments arranged so that the entire indebtedness was received at least prior to the commencement of the last two months of coverage under the policy. In all instances the plans were so arranged that, assuming seasonable payment by the policyholder, Liberty would have in hand from the policyholder a portion of his premium in excess of that portion of the policy year which had expired.[1]

Our task, of course, is to divine what the Legislature intended to subject to the excise by the use of the words "gross premiums." We find nothing in G. L. c. 63 which is instructive on this point. Similarly there is no showing of any administrative practice which might be used as an aid

---

[1] The 1969 plan required a minimum first premium instalment of 25% of the total policy premium and involved the use of monthly invoices referring to the instalment charge of sixty cents for each instalment as a "billing expense fee." The 1967 and 1968 plan imposed a carrying charge of sixty cents for each instalment on premium balances between $45 and $300, inclusive, and imposed "a carrying charge of 6% simple interest on the declining balance starting one month after policy effective date" to be paid with the first instalment if the premium balance exceeded $300. Except for this latter feature of the 1967 and 1968 plan, neither plan determined the amount of the instalment charge in relation to the amount payable by the policyholder.

in ascertaining the legislative intent.[2] Liberty contends that the charges are not imposed for insurance protection, that they represent investment income[3] and that because they are separately assessed, they are like finance charges which, Liberty argues, are not subject to taxation under the Massachusetts sales tax as part of the sales price. The commission argues that, as the Appellate Tax Board found, the charge is designed to cover part of the additional cost of offering motor vehicle insurance protection to those who elect to pay in instalments; that use of the words "gross premiums" rather than "premiums" in § 22 is significant; and that we should follow decisions in California and Oregon which treated similar instalment fees as gross premiums. See *Allstate Ins. Co.* v. *State Bd. of Equalization,* 169 Cal. App. 2d 165 (1959); *State Ins. Commr.* v. *Allstate Ins. Co.* 221 Ore. 371, 378 (1960).

Although the answer is far from clear, we believe that the commission has the better of the argument. The instalment arrangement appears to be designed as an inducement to the purchase of the insurance and to cover the additional cost of administering the plan rather than as a measure of

---

[2] Liberty asserts that additional instalment charges have not been treated "as taxable premiums by the Massachusetts authorities, until now." The record is unclear as to any long-standing administrative practice in this respect. It does appear that a survey by the commission in July, 1970, indicated that 57 of the 101 insurance companies having instalment premium plans in effect reported instalment charges in their taxable premiums for the years 1967, 1968, and 1969. See G. L. c. 63, § 23, for a similar excise on foreign insurance companies. It would appear that until 1970 the commission did not advert to the question.

[3] Liberty points to G. L. c. 63, § 22A, inserted by St. 1971, c. 555, § 27, applicable to taxable years ending on and after December 31, 1971 (see St. 1971, c. 555, § 67, which imposes an excise of one per cent of Liberty's total gross investment income as shown "in Item 10, Column 8, Part I, of the Underwriting and Investment Exhibit" of its annual statement. General Laws c. 63, § 22A, is not applicable to the taxable years involved in this case, and thus can have no effective bearing on the meaning of the words "gross premiums" for the purposes of this case. If instalment plan charges are properly reportable "in Item 10, Column 8, Part I, of the Underwriting and Investment Exhibit" on an annual statement, we would be inclined to interpret such charges as not constituting "gross premiums" under § 22 for taxable years as to which § 22A is applicable. In the absence of proof of an established practice of the division of insurance to treat instalment plan charges as investment income for annual statement purposes in the years 1968, 1969, and 1970, however, we need not consider whether that practice would be an aid to the construction of § 22.

the cost of the extension of credit. The charge in most instances is unrelated to the outstanding balance due to Liberty. If payments are made according to the plan, at no time will insurance protection be extended on credit, because at all times Liberty will have received a higher portion of the annual premium than the portion of the policy year which has expired. If all policyholders paid their motor vehicle insurance premiums in instalments but proportionately in advance of the extension of coverage, there would, we believe, be no serious question that the full amount of those instalments should be treated as premiums. The fact that many policyholders pay their premium charges in one lump sum, either by choice or because their insurers do not offer instalment plans, should not change the result.

We do not find an attempted analogy to the State sales tax (G. L. c. 64H) informative. The inclusion or exclusion of finance charges from the amount on which the sales tax is imposed, whatever the answer may be, can hardly furnish a guide to the meaning of § 22.[4] The sales tax statute, which contains definitions of such words as "gross receipts" (see G. L. c. 64H, §§ 1 [6] and 2) and "sales price" (see G. L. c. 64H, § 1 [14]) presents a different pattern from § 22.[5]

Admittedly there is in a sense an extension of credit to a person who elects the instalment payment method because for a consideration he is permitted to delay payment of amounts otherwise due. Compare *State Farm Mut. Auto.*

---

[4] Liberty asserts that the sales tax does not apply to finance charges which are itemized separately from the sales price of goods sold at retail. We accept that assertion for the purposes of this case, although we do not join with Liberty in regarding that question as "well settled" by the answer to the fourth question appearing in Sales Tax Information Letter No. 3. See Barrett and Bailey, Taxation (2d ed.) Appendix p. 504 (1970). That answer, so far as relevant, states that "interest and penalties on late payments" are not subject to tax. It does not deal with finance charges.

[5] The inappropriateness of the asserted analogy is demonstrated by the fact that the sales tax is imposed on an amount exclusive of various charges, such as the sales tax itself (G. L. c. 64H, § 1 [14] [c]), whereas the premium excise is based on a gross premium which presumably reflects the premium excise as one of the expense elements in the premium charge. There seems to be no contention that Liberty should not pay an excise on that clearly ascertainable portion of the premium which is equal to the premium excise imposed.

*Ins. Co.* v. *Ott*, 224 La. 1008 (1954). However, the Legislature has tended to characterize payments under instalment premium plans in insurance, rather than in credit finance, terms. The instalment payments are described in G. L. c. 175, § 193B, as "rates and charges" which must be "equitable and nondiscriminatory."

On balance we believe that Liberty's instalment charges are more appropriately regarded as payments for insurance, and thus part of "gross premiums" for premium excise tax purposes, than as interest charges. Consequently, for the purposes of G. L. c. 63, § 22, instalment rates and charges approved by the Commissioner of Insurance under G. L. c. 175, § 193B, are part of "gross premiums for . . . policies written or renewed." The decision of the Appellate Tax Board is affirmed.

*So ordered.*