2007-NMCA-027

153 P.3d 664

**Laura NAKASHIMA, for herself and all others similarly situated, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

**No. 26,155.**

Court of Appeals of New Mexico.

Jan. 18, 2007.

Certiorari Denied, No. 30,234, March 1, 2007.

Freedman, Boyd, Daniels, Hollander & Goldberg, P.A., David Freedman, Alexandra Freedman Smith, McCary, Wilson & Pryor, Floyd D. Wilson, Alan Wilson, Dennis M. McCary, Alan Konrad, Eaves & Mendenhall, P.A., John M. Eaves, Karen S. Mendenhall, Peifer, Hanson & Mullins, Charles Peifer, Robert Hanson, Albuquerque, NM, Lerach Coughlin Stoia Geller, Rudman & Robbins LLP, Leonard B. Simon, Timothy G. Blood, Kevin K. Green, San Diego, CA, for Appellant.

Miller Stratvert, Ann M. Conway, Albuquerque, NM, Heller Ehrman LLP, Vanessa Wells, Menlo Park, CA, Heller Ehrman LLP, E. Joshua Rosenkranz, New York, NY, Sedgwick, Detert, Moran & Arnold LLP, Kevin J. Dunne, San Francisco, CA, for Appellee.

## OPINION

PICKARD, Judge.

{1} Plaintiff appeals from the district court's grant of summary judgment in favor of Defendant on Plaintiff's breach of contract claim. Plaintiff represents a yet-uncertified class of automobile insurance policyholders who elected to pay their automobile insurance premiums in installments. Defendant is an automobile insurance company that entered into a contract with Plaintiff to provide insurance for her automobile. Plaintiff argues that the installment fees charged to those policyholders who pay their premiums in installments are considered part of the premium and therefore should be described as such in their insurance policies. Because the fees were not included in the stated premium, Plaintiff argues that Defendant breached its insurance contract with her and that she is entitled to damages. We hold that the installment fees in this case are not premium and therefore conclude that the district court did not err in granting summary judgment in favor of Defendant.

## BACKGROUND

{2} The material facts of this case are undisputed. Over twenty years ago, Plaintiff entered into a contract for automobile insurance with Defendant. Plaintiff's policy provided her with continuous insurance coverage for a six-month period. Initially, Plaintiff's parents paid the premium in a lump sum amount and renewed the policy every six months.

{3} A few years later, Plaintiff took sole responsibility for paying her automobile insurance premiums. Plaintiff soon realized that she could not afford to pay her premium in a lump sum payment as her parents had done. Plaintiff contacted her insurance agent and asked whether she could pay her premium in installments. The insurance agent then sent a form to Plaintiff so that she could sign up for Defendant's payment plan, which allowed her to pay her premium in monthly installments. The payment plan also included an installment charge, which has varied throughout the years, but is currently three dollars per month. Although not stated in the policy issued to Plaintiff, both the amount of the monthly premium and the installment fee were included in the form signed by Plaintiff when she agreed to the payment plan. Plaintiff then began paying her automobile insurance premiums in monthly installments and continued to do so for nearly twenty years.

{4} In 2004, Plaintiff filed suit against Defendant alleging breach of contract and seeking classwide relief. Plaintiff argued that the installment fees charged by Defendant were actually considered premium and therefore should have been included in the "total premium" stated on her policy. According to Plaintiff, Defendant's failure to include such fees in the premium constituted a breach of contract. Upon both parties' motions for summary judgment, the district court concluded that Defendant's installment fees were not considered premium and granted Defendant's motion for summary judgment. Plaintiff appeals.

## STANDARD OF REVIEW

{5} We review a district court's grant of summary judgment de novo. *Self v. United*

*Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* We will "view the facts in the light most favorable to the party opposing summary judgment, drawing all inferences in favor of that party." *Stieber v. Journal Publ'g Co.,* 120 N.M. 270, 271–72, 901 P.2d 201, 202–03 (Ct.App.1995). In this appeal, we are asked to construe the meaning of an insurance contract, as well as various statutory law provisions. These are both questions of law that we review de novo. *See Cerrillos Gravel Prods., Inc. v. Bd. of County Comm'rs,* 2004–NMCA–096, ¶ 4, 136 N.M. 247, 96 P.3d 1167, *aff'd,* 2005–NMSC–023, 138 N.M. 126, 117 P.3d 932; *Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 7, 123 N.M. 526, 943 P.2d 560.

## DISCUSSION

{6} In granting Defendant's motion for summary judgment, the district court observed that this is a modal premium case "with a twist." According to the district court, unlike other modal premium cases being litigated throughout the country, the installment fee in this case was disclosed to Plaintiff, and both parties agreed that Plaintiff was aware of the fee. Despite this, Plaintiff argues that because the policy issued by Defendant did not include the installment fees in the "total premium" amount, Defendant has breached its contract with Plaintiff. According to Plaintiff, installment fees are premium and should have been included in the policy. We disagree and affirm the district court's dismissal of Plaintiff's claims.

{7} We will begin this opinion with a discussion of Plaintiff's argument that the policy itself requires that installment fees be described as part of the premium. Second, we address Plaintiff's argument that state law mandates that installment fees be stated in the policy and, in doing so, will consider case law from other jurisdictions bearing on the question.

## Defendant Not Liable for Breach of Contract Based on the Policy Language

■ {8} Plaintiff asserts that Defendant breached the insurance contract by charging her more than the "total premium" specified in her policy. The term "total premium" is not defined in the policy. Plaintiff argues that the common and ordinary meaning of the term "total premium" includes installment fees and that such fees must therefore be included in the premium stated on the policy. The district court concluded that Plaintiff expressly agreed to the installment fees by entering into a separate contract with Defendant to pay her premium in installments and further that the fees associated with paying in installments are not premium. We agree and conclude that Defendant is not liable for breach of contract based upon the language of the policy.

{9} Initially we observe that "[t]he insurance contract was agreed upon, and the premium set, before any installment arrangement was offered." *Sheldon v. Am. States Preferred Ins. Co.,* 123 Wash.App. 12, 95 P.3d 391, 393 n. 10 (2004). This suggests, as the district court concluded, that the payment plan agreement constituted a separate agreement between the parties. To the contrary, Plaintiff argues that because her insurance policy allows for policyholders to pay in installments, the later payment plan agreement signed by Plaintiff was only an administrative detail that confirmed an already existing right.

■ {10} Plaintiff agrees that the legal effect of the separate document allowing her to pay her premium in installments hinges on whether the insurance policy itself permits installment payments. Specifically, Plaintiff's insurance policy provides that

> [t]he policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

Plaintiff argues that Defendant's use of the word "payments" in the plural allows policyholders to pay on an installment basis. We reject Plaintiff's interpretation of this term,

as the plain meaning of this contractual provision suggests a different meaning. *See Christmas v. Cimarron Realty Co.*, 98 N.M. 330, 332, 648 P.2d 788, 790 (1982) ("[C]ourts will apply the plain meaning of the contract language as written in interpreting terms of a contract."); *see also Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 20, 123 N.M. 752, 945 P.2d 970 (stating that a court should examine the language of the policy itself, including punctuation, grammar, and syntax, in order to resolve any ambiguities within the policy). We believe that "payments" in the plural refers to the possibility of successive policy periods mentioned in the previous sentence and not the possibility of multiple payments within a single policy period. We agree with the district court that the term "payments" in this context means that each payment for each renewal period must be made before the end of the current policy period. We therefore disagree with Plaintiff's assertion that the term "payments" in this context allows for the payment of premium in installments.

■ {11} In further support of her assertion that the policy itself allows for installment payments, Plaintiff argues that because the declarations page of her policy references her payment plan, the policy must allow for installment payments. We disagree. We observe that if Plaintiff had not entered into a separate agreement to pay her premium in installments, such references to a payment plan would not have appeared on her policy. Such language therefore cannot be construed as allowing for installment payments because it only appears on the policy after a policyholder has entered into an agreement with Defendant regarding installment payments.

■ {12} Plaintiff argues that even if the insurance policy does not allow for installment payments, an integration clause within the insurance policy bars any additional agreements. The integration clause within Plaintiff's insurance policy provides that "this policy contains all of the agreements between [the policyholder] and [Defendant] or any of [Defendant's] agents." However, as Defendant correctly observes, an integration clause only covers antecedent and contemporaneous agreements; it does not foreclose the possibility of future agreements. 6 Arthur Linton Corbin, *Corbin on Contracts* §§ 573–74 (interim ed.2002); *cf. Bell v. Lammon*, 51 N.M. 113, 118, 179 P.2d 757, 760 (1947) ("[A] complete, valid, written contract merges all prior and contemporaneous negotiations and agreements within its purview[.]" (internal quotation marks and citation omitted)), *overruled on other grounds by Wilburn v. Stewart*, 110 N.M. 268, 269–70, 794 P.2d 1197, 1198–99 (1990). Moreover we reject Plaintiff's argument that the payment plan agreement should be considered an antecedent agreement because Plaintiff has renewed her policy numerous times and each renewal contains the same integration language. We observe that Plaintiff did not have to reapply for insurance coverage after each six-month period; instead, she "renewed" her existing policy. Such renewals are therefore best characterized as extensions of the original policy agreement. *Cf. Vigil v. Rio Grande Ins. of Santa Fe*, 1997–NMCA–124, ¶ 14, 124 N.M. 324, 950 P.2d 297. Similarly, we note that Plaintiff did not have to sign a new payment plan agreement each time she renewed her policy. We therefore do not believe that the integration clauses within these policy renewals somehow prevented the installment payment plan from constituting a separate agreement between the parties. Moreover, it appears the method of payment is separate from the coverage and cost of coverage contained in the policy. Accordingly, an agreement regarding how the premium is to be paid would not be covered by the integration clause.

■ {13} Plaintiff next argues that the payment plan agreement cannot be considered a contract because the agreement was not supported by adequate consideration. "Consideration adequate to support a promise is essential to enforcement of the contract and must be bargained for by the parties." *Romero v. Earl*, 111 N.M. 789, 791, 810 P.2d 808, 810 (1991). Adequate consideration is present in a contract where something " 'is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' " *Id.* (quoting Restatement (Second) of Contracts § 71 (1979)). Plaintiff argues that because both

parties had pre-existing duties stemming from the insurance policy with respect to installment payments, there is no consideration to support the second contract. *See Jaynes v. Strong–Thorne Mortuary, Inc.*, 1998–NMSC–004, ¶ 11, 124 N.M. 613, 954 P.2d 45. As we previously discussed, the insurance policy itself does not allow for payment of premium in installments but, instead, requires full payment before the end of the current policy period to ensure coverage for the successive periods. The payment plan agreement, or second contract, constituted a separate agreement between the parties with respect to an alternative way to pay the policy premium. In terms of consideration, Defendant gave up its right to obtain the payment of premium in a lump sum, whereas Plaintiff obtained the right to pay her premium in installments in exchange for a fee. We therefore conclude that the payment plan agreement was a second contract between the parties supported by adequate consideration.

{14} Additionally, Plaintiff argues that because Defendant cancels policies for failure to pay the installment fees, such fees must be considered premium. Conversely, the district court concluded that Defendant does not cancel policies for failure to pay installment fees. Plaintiff argues that this conclusion is contrary to the record. In support of her assertion, Plaintiff points to the deposition testimony of one of Defendant's employees. The deposition testimony reveals that when a policyholder submits an installment payment that does not cover the amount due, Defendant first applies the payment to the installment fee and then the remaining amount to the premium. Depending on the remaining balance owed on the premium, Defendant may send out a cancellation notice, or it may simply indicate the shortage on the next bill. Plaintiff argues that, based on this practice, failure to pay the installment fees will inevitably result in cancellation. While hypothetically this may be true, we observe that the policy is not actually cancelled for failure to pay the installment fees, but for failure to pay the premium. Moreover, we do not perceive the payment of installment fees to be "optional," as policyholders do enter into a separate agreement with Defendant for installment payments and failure to pay the installment fees when due would be a breach of that agreement. We are therefore not convinced that Defendant's procedures for dealing with short payments somehow make its installment fees part of the premium.

{15} Finally, Plaintiff argues that the meaning of the term "total premium" on the insurance policy clearly encompasses installment fees and that such fees should therefore have been included in the premium stated on the policy. We disagree.

■ {16} Where, as here, a contract does not define a term, we will give the term its "common and ordinary meaning." *Battishill v. Farmers Alliance Ins. Co.*, 2006–NMSC–004, ¶ 8, 139 N.M. 24, 127 P.3d 1111. Plaintiff argues that the common meaning of "premium" is "the consideration paid in money or otherwise for a contract of insurance in the form of an initiation fee, an admission fee, an assessment, or a stipulated single or periodic payment according to the nature of the insurance." *Webster's Third New International Dictionary* 1789 (1981). Even accepting Plaintiff's proffered definition, we conclude that installment fees are not considered part of the total premium stated in the policy.

{17} We agree with the district court's conclusion that the installment fees are not consideration for a contract of insurance but, instead, cover the expense of allowing policyholders to pay their premiums in installments. A number of considerations support this conclusion.

{18} First, payment of installment fees is not a prerequisite to obtaining automobile insurance coverage from Defendant. We observe that an individual can obtain insurance coverage without paying the installment fees by paying his or her premium in a lump sum. Indeed, if Plaintiff had not contacted her insurance agent regarding installment payments, she would have paid Defendant solely the premium as stated on the policy. Because individuals are in no way obligated to pay the installment fees, aside from their own financial and/or personal preference, the installment fees cannot be considered consideration for the procurement of insurance and are therefore not premium. *Compare*

*Blanchard v. Allstate Ins. Co.*, 774 So.2d 1002, 1005–06 (La.Ct.App.2000) (concluding that installment fee was not part of premium where not a prerequisite to obtaining insurance coverage), *with State Farm Mut. Auto. Ins. Co. v. La. Ins. Rating Comm'n*, 79 So.2d 888, 894 (La.Ct.App.1955) (holding that a membership fee was part of premium where policyholder was required to pay the fee in order to obtain coverage).

{19} Second, Defendant's cancellation policy lends further support to our conclusion that installment fees are not premium. We observe that when a policyholder cancels his or her insurance, he or she is refunded any unearned premiums. However, the installment fees paid by the policyholder are not refunded.

{20} Finally, we observe that insurance rates are associated with the transfer of risk. 5 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* § 69:1, at 69–5 (3d ed. 2005) ("The amount of the premium varies in proportion to the risk assumed."); *see also* NMSA 1978, § 59A–1–5 (1984) (" 'Insurance' is a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils, or to pay or grant a specified amount or determinable benefit in connection with ascertainable risk contingencies[.]"). Installment fees, on the other hand, are not associated with any sort of transfer of risk but, instead, cover the costs associated with a payment plan. We therefore hold that installment fees are not considered premium under the language of Plaintiff's insurance policy.

{21} It is for these reasons that we conclude that the district court correctly ruled that Defendant is not liable for breach of contract based on the policy language.

**Defendant Not Liable for Breach of Contract Based on the Insurance Code**

{22} Plaintiff argues that even if the policy itself does not evidence a breach of contract by Defendant, the Insurance Code, interspersed throughout NMSA 1978, §§ 59A–1–1 to –59–4 (1984, as amended through 2006), clearly demonstrates that Defendant has breached its contract with Plaintiff. Under the Insurance Code, "[n]o person shall wilfully collect as premium, administration fee or other charge for insurance or coverage any sum in excess of the premium or charge applicable thereto as specified in the policy." Section 59A–16–24(B). Plaintiff argues that because the Insurance Code definition of "premium" clearly encompasses installment fees, Defendant has violated New Mexico law by not including its installment fees as part of the "total premium" stated in the policy. Additionally, Plaintiff argues that even if the installment fees are not "premium," Section 59A–16–24(B) also requires administration fees to be specified in the policy and that this term must include installment fees. The district court concluded that the Insurance Code's definition of "premium" does not include installment fees and that Defendant's fully disclosed installment fees comport with the requirements of the Insurance Code. We agree.

{23} The Insurance Code defines "premium" as "the consideration for insurance or for an annuity, by whatever name called. Any 'assessment,' or any 'membership,' 'policy,' 'survey,' 'inspection,' 'service' or similar fee or other charge in consideration for an insurance or annuity contract or procurement thereof is part of the premium." Section 59A–18–3. Plaintiff argues that the installment fees charged by Defendant are indeed service fees associated with the procurement of insurance, which constitute "premium" as defined in Section 59A–18–3. We agree with the district court that Defendant's installment fees are not consideration for insurance and that such fees are not charged in connection with the procurement of insurance. Rather, as discussed previously, the installment fees are associated with the privilege of paying a premium in installments and are not for the actual purchase of insurance itself.

{24} There are only two published cases addressing the question of whether installment fees constitute premium in the insurance law context. In *Blanchard*, policyholders sought review of an insurance commissioner's opinion that installment fees were not premium and therefore did not need to be included on automobile insurance policies. 774 So.2d at 1003. The

court agreed with the analysis of the insurance commissioner and held that such fees were not paid to obtain insurance "but for the privilege of paying the premium over time." *Id.* at 1006. Therefore, the court concluded that such fees were not premium under Louisiana insurance law. *Id.*

{25} Four years later, a different circuit of the Louisiana Court of Appeal was presented with the same issue. *See Cacamo v. Liberty Mut. Fire Ins. Co.,* 885 So.2d 1248, 1250 (La.Ct.App.2004). Although three judges had dissented in the *Blanchard* decision and the court was not bound by the decision, the court in *Cacamo* found the reasoning of *Blanchard* persuasive. *Cacamo,* 885 So.2d at 1256. The court observed that the ability to pay premiums in installments, rather than in lump sums, was not required by law and was therefore a privilege. *Id.* Moreover, the court noted that because not all policyholders utilize the installment plan option, "it would be inequitable to increase the quoted premium for all policyholders in order to accommodate those persons who are unable or unwilling to pay the premium in one lump sum." *Id.* As in *Blanchard,* the court in *Cacamo* held that installment fees were not included in the statutory definition of premium. 885 So.2d at 1256.

{26} We find the reasoning in *Blanchard* and *Cacamo* both persuasive and helpful to our analysis. Further, we are not persuaded by Plaintiff's argument that New Mexico's statutory definition of "premium" is so materially different from Louisiana's as to warrant a different outcome in New Mexico. In Louisiana, "premium" is defined as

all sums charged, received, or deposited as consideration for the purchase or continuance of insurance for a definitely stated term, and shall include any assessment, membership, policy, survey, inspection, service or similar fee or charge made by an insurer as a part of the consideration for the purchase or continuance of insurance.

La.Rev.Stat. Ann. § 22:5(13) (West, Westlaw through 2006 Sess.). Plaintiff argues that the key difference between Louisiana's definition and New Mexico's is that Louisiana

does not define "premium" as consideration for insurance "by whatever name called," as New Mexico does. *See* § 59A–18–3. Although the Louisiana statute does not use the same catchall phrase as the New Mexico statute does, the language of the Louisiana statute does not suggest that "premium" is limited to only those types of charges described in the statute. This is demonstrated by the fact that the statute includes the phrase "or similar fee or charge" after listing the possible charges or fees included in the term "premium." *See* La.Rev.Stat. Ann. § 22:5(13). Moreover, the pertinent language in both statutes states that "premium" includes any fees or charges that are consideration for insurance. *See* § 59A–18–3; La. Rev.Stat. Ann. § 22:5(13). Indeed, both statutes define "premium" in this manner. *See* § 59A–18–3; La.Rev.Stat. Ann. § 22:5(13). We are therefore not persuaded that the reasoning in *Blanchard* and *Cacamo* is somehow limited by the uniqueness of Louisiana's statutory definition of "premium."

{27} Plaintiff urges us to rely on case law and administrative decisions from other jurisdictions that purportedly recognize that installment fees are considered premium. Plaintiff first points to a recent California Insurance Commissioner's opinion dealing with a lawsuit similar to the case at bar. The district court in that lawsuit referred the question of whether finance charges imposed on policyholders who pay insurance in installments constituted "premium" to the California Department of Insurance ("DOI"). The DOI then allowed briefing by interested parties and held hearings on the subject. After considering the various arguments on the issue, the DOI decided that installment fees are considered part of the premium under California law. Plaintiff asks this Court to adopt the reasoning of the DOI.

{28} Initially we observe that the term "premium" is not defined in the California Code. The DOI was therefore not limited by statutory language when determining the meaning of "premium." Interestingly, the DOI did consider a definition of "premium" quite similar to our own and concluded that if California had such a definition, installment fees would not be considered "premium" in

California. The DOI, however, rejected this definition and concluded that it was not how "premium" should be defined in California, choosing instead to rely on policy concerns in defining "premium." With respect to the rejected definition, the DOI noted that in the actuarial context, "premium" means "consideration paid an insurer for undertaking to indemnify the insured against a specific peril." As previously mentioned, in New Mexico "premium" is "the consideration for insurance or for an annuity, by whatever name called." Section 59A–18–3. Moreover, "insurance" is defined by our statutes as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils." Section 59A–1–5. Given the similarities between the actuarial definition rejected by the DOI and our own statutory definition of premium, we are not persuaded that an insurance commissioner in New Mexico would come to the same conclusion regarding installment fees as an insurance commissioner in California would. It is for these same reasons that we do not find the two California district court decisions cited by Plaintiff and relying on the DOI opinion persuasive.

{29} Additionally, although we are mindful of the fact that, like California's, New Mexico's Insurance Code serves to protect consumers, *see N.M. Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 761, 809 P.2d 1278, 1289 (1991), we disagree with Plaintiff's assertion that the district court's decision disregards such purposes. We observe that neither party disputes the fact that Plaintiff was fully informed of the installment fee and expressly acquiesced to it by deciding to pay her premium in installments and by signing up for Defendant's payment plan. Although not stated on the policy, Defendant's installment fees are clearly disclosed to its policyholders before policyholders enter into an agreement to pay premiums in installments. We fail to see how policyholders could be more protected under our Insurance Code if insurers were required to embed the installment fees in the premium stated on the policy, especially since nearly half of Defendant's policyholders choose not to pay their premiums in installments.

{30} Plaintiff also argues that a line of cases, mostly in California, dealing with the definition of "gross premiums" for tax purposes supports her assertion that installment fees are premium. As Plaintiff asserts, a number of state court decisions have held that installment fees are considered "gross premiums" for tax purposes. *See, e.g., Metro. Life Ins. Co. v. State Bd. of Equalization,* 32 Cal.3d 649, 186 Cal.Rptr. 578, 652 P.2d 426, 432 (1982) (in bank); *Interinsurance Exch. of Auto. Club of S. Cal. v. State Bd. of Equalization,* 156 Cal.App.3d 606, 203 Cal. Rptr. 74, 77 (Ct.App.1984); *Allstate Ins. Co. v. State Bd. of Equalization,* 169 Cal.App.2d 165, 336 P.2d 961, 967 (1959); *Liberty Mut. Ins. Co. v. State Tax Comm'n,* 365 Mass. 411, 312 N.E.2d 559, 562 (1974); *State ex rel. Ins. Comm'r v. Allstate Ins. Co.,* 221 Or. 371, 351 P.2d 433, 437–38 (1960), *overruled on other grounds by Parr v. Dep't of Revenue,* 276 Or. 113, 553 P.2d 1051, 1052–53 (1976) (en banc). We agree with the district court that these cases are not applicable. "Premium" for tax purposes has a specialized meaning that allows the state to tax the entire benefit received by insurance companies for doing business within the state. *See* 84 C.J.S. *Taxation* § 217, at 290 (2001) ("[T]he purpose of taxing provisions is to exact payments from insurers doing business in the state[.]"). The term "premium," therefore, necessarily must have broader application in the tax context than in the insurance context.

{31} Additionally, Plaintiff argues that the district court's decision conflicts with a line of New Mexico cases. We disagree. In *Nellis v. Farmers Insurance Co. of Arizona,* No. CV–2003–02564, slip op. at 4–6 (2d Jud. Dist. Jan. 28, 2005), the district court granted the plaintiff's motion for summary judgment based on breach of contract and found that service charges constituted premium under the plaintiff's insurance policy. What is significant in that case is that the monthly payment agreement did not mention a service fee and there was no evidence that the plaintiff understood that a fee would be charged and/or acquiesced to the fee. *Id.* at 2–3. Moreover, the insurance policy had only a one-month term, and the district court found it unclear as to why a service charge would be imposed where the plaintiff was not

offered an installment plan. *Id.* at 4. This case is therefore distinguishable from the case at bar, and we are not persuaded by the former case's reasoning.

{32} Similarly, Plaintiff's reliance on *Azar v. Prudential Insurance Co. of America,* 2003–NMCA–062, 133 N.M. 669, 68 P.3d 909, and *Smoot v. Physicians Life Insurance Co.,* 2004–NMCA–027, 135 N.M. 265, 87 P.3d 545, is unavailing. Both cases involved suits dealing with a failure to disclose material facts relating to premium payment options. *See Smoot,* 2004–NMCA–027, ¶ 3, 135 N.M. 265, 87 P.3d 545; *Azar,* 2003–NMCA–062, ¶ 10, 133 N.M. 669, 68 P.3d 909. In the instant case, Plaintiff does not allege that she was not aware of the installment fees or that Defendant failed to disclose such fees to her. Plaintiff's only complaint is that such fees were not stated on the policy itself. Notably, neither of the other cases directly addressed the question of whether installment fees are considered premium, either under Defendant's policy or under the Insurance Code. We agree with the district court that both cases are irrelevant for our purposes.

{33} Finally, Plaintiff argues that even if the installments are not considered "premium" under the Insurance Code, such fees must be deemed an "administration fee" that, like the premium, must be stated on the policy. *See* § 59A–16–24(B). We observe, however, that the administration fee mentioned in Section 59A–16–24(B) is specifically defined as a "charge for insurance or coverage." As we have previously discussed, the installment fees in the instant matter are not charges for insurance, but rather separate fees related to the payment option selected by the policyholder. Such fees are not a prerequisite to obtaining coverage, and it is certainly possible to obtain insurance coverage from Defendant without having to pay the fees. We therefore conclude that the installment fee is not an "administration fee" as described by Section 59A–16–24(B). Defendant has therefore not violated the Insurance Code, and we hold that the district court correctly granted summary judgment in favor of Defendant.

## CONCLUSION

{34} The district court's grant of summary judgment in favor of Defendant and dismissal of Plaintiff's claim are affirmed.

{35} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.